No. 56,142

STEVEN M. TURNBULL, *Appellee*, v. GARY E. BYRAM, *Appellant*, and
THE CITY OF HUTCHINSON, KANSAS, *Cross-Appellant*.

(684 P.2d 429)

Opinion filed July 13, 1984.

*J. Stanley Hill*, of Branine, Chalfant & Hill, of Hutchinson, argued the cause, and *William David Chalfant*, of the same firm, was with him on the brief for the appellant.

*Larry A. Bolton* and *Dennis D. Webb*, of Gottschalk, Bolton & Webb, of Hutchinson, argued the cause, and were on the brief for the appellee.

*Philip H. Alexander*, city attorney, argued the cause, and was on the brief for the cross-appellant.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a negligence action involving an intersection collision in Hutchinson, Kansas, in which Gary E. Byram and the City of Hutchinson (defendants-appellants) appeal a jury award of damages in favor of Steven M. Turnbull (plaintiff-appellee). Appellant Byram contends that under the facts presented he was not negligent as a matter of law in operating his vehicle. The City denies negligence, but contends, if the evidence establishes negligence on its part, it is immune from liability under provisions of the Kansas Tort Claims Act (KTCA), K.S.A. 1983 Supp. 75-6101 *et seq.*

On the morning of November 4, 1981, at approximately 6:55 a.m., a truck driven by Gary Byram collided with one driven by

Steven Turnbull at the intersection of Eleventh Street and Highway K-61 in Hutchinson. The overhead traffic control signals, which normally governed traffic traveling through the intersection, were not working because of an incident earlier that morning when an automobile struck and disabled the traffic control box. As a temporary measure the city street department had placed a portable four-way stop sign, equipped with yellow flashing lights, in the middle of the intersection. However, due to heavy fog conditions, visibility was very poor, and the collision involved here resulted.

K-61 and Eleventh Street both have four lanes of traffic at the point where they intersect. K-61 also has two left turn lanes. The overhead traffic control signals had become operational at this intersection only a week before the accident occurred. Prior to that time traffic at the intersection was governed by stop signs requiring east- and westbound traffic on Eleventh to stop and yield the right-of-way to through traffic on K-61. Approximately 60 to 70 feet west of this intersection is the adjacent intersection of Lorraine and Eleventh Streets. Lorraine runs parallel with K-61 to the north of Eleventh Street but does not continue south of Eleventh beyond the intersection. The traffic signals for both intersections were controlled by the control box which had been damaged that morning.

At about 5:30 the morning of the collision a police officer discovered the traffic signals for the two intersections were not operating and summoned a traffic signal technician to the scene. The technician, Frank Gulotta, arrived at approximately 5:50 a.m. and requested that a four-way stop sign and two single stop signs be brought to the intersection. They arrived at 6:20 a.m. Due to the fog, yellow flashing lights were attached to the four-way stop sign which was placed in the center of the K-61 and Eleventh Street intersection. The other two stop signs were used to control traffic at the Lorraine intersection. One was placed on the south side of Eleventh Street to control eastbound traffic entering the intersection, and the other was placed on the west side of Lorraine to control southbound traffic entering the intersection. All three signs were in place by 6:30 a.m. A city employee helping place the signs testified the four-way stop sign could be seen from a distance of 50 feet to the west of the intersection. Mr. Gulotta stayed at the intersection until 6:45

a.m. watching the response of the traffic to ensure the stop signs were adequately controlling the situation. He saw about a dozen cars pass through the intersection during this time and each properly stopped for the stop signs, regardless of the direction from which it approached.

The plaintiff left his home about 6:20 the morning of the collision to go to a nurse's aid training class scheduled to begin at 6:45 a.m. at the Hutchinson hospital. His route to the hospital required him to travel north on K-61 through the intersection at Eleventh Street. About a quarter mile south of the intersection he could see the traffic signals were not working. He did not see any other type of traffic control devices placed at the intersection, so assumed the prior traffic control system (*i.e.*, that Eleventh Street traffic was required to stop for through traffic on K-61) governed the traffic traveling through the intersection. Without stopping, he passed through the intersection between 6:30 and 6:40 at a speed of 20 m.p.h., watching for east- and westbound traffic. Upon arriving at the hospital he realized he had forgotten his lab coat, so returned home, passing through the intersection again in the same manner. After retrieving his lab coat, it was again necessary for him to pass through the intersection on his second trip to the hospital. He testified he could only see for a distance of ten feet. As he approached the intersection he again looked to his left and right for east- and westbound traffic. Seeing none, he proceeded through the intersection *without stopping*, traveling at a speed of approximately 20 m.p.h. He did not see the defendant's truck until it was approximately ten feet away from his vehicle, approaching from his left, or the west. The two trucks collided. He testified he thought the defendant was traveling as fast or faster than he was. He also testified he did not see the four-way stop sign on any of his three trips through the intersection due to the density of the fog. He further testified that on his first two trips through the intersection he did not see any cars traveling on K-61 stop at the intersection, but instead saw several cars pass through the intersection without stopping as he had. He did, however, see one car traveling on Eleventh Street stopped at the intersection.

Gary Byram testified he was eastbound on Eleventh Street approaching the Lorraine Street intersection when he realized the newly installed traffic lights were not functioning. Several

yards west of the intersection he saw the stop sign at the Lorraine Street intersection and the flashers on the four-way stop sign in the middle of the K-61 intersection. He stopped first at Lorraine Street and then proceeded to the second intersection where he clearly saw the four-way stop sign. Once there he allowed two southbound cars stopped on K-61 to proceed across the intersection, and not seeing any other approaching vehicles, he then started into the intersection. He did not see the plaintiff's truck until just prior to the collision. He was traveling 10 to 15 m.p.h. at the time of the impact. He testified he saw three vehicles travel through the intersection prior to when he did, none of which failed to stop at the four-way stop sign.

A police officer who arrived at the scene shortly after the accident occurred testified that due to the fog, visibility was "zero." He could not tell the flashing object in the middle of the intersection was a stop sign until he was entering the intersection. He determined Byram's vehicle struck Turnbull's vehicle in its side. He talked with Byram at the scene and prepared a report later that day indicating Byram had stated he had not seen the stop sign and had failed to stop. However, about a week later he talked with Byram and determined he had misunderstood what Byram had said and revised his report, omitting Byram's statement about failing to stop. Byram testified he had told the officer he thought the *other driver* had run the stop sign, and when he discovered the officer had not accurately reported what he had said, he asked the officer to change it. A witness who had driven through the intersection that morning testified that due to the density of the fog the four-way stop sign was not visible until he had entered into the intersection. Another witness who had driven through the intersection before the four-way stop sign was in place testified visibility was so poor she could see nothing.

In defining the issues prior to trial the parties charged each other with negligence in several respects. The plaintiff alleged Byram was negligent in the operation of his motor vehicle. At trial he testified he felt Byram was negligent because (1) he thought Byram was going as fast or faster than he was when the collision occurred; (2) Byram knew there was a stop sign controlling traffic, whereas he didn't; (3) the plaintiff had the right-of-way over Byram because he was to Byram's right in the

intersection; and (4) he thought Byram should have been able to see his vehicle approaching the intersection because "it seems easier to see out of fog than to see into the fog." (The plaintiff testified he was on the outside of the fog bank coming into it and the defendant was in the fog at the time of the collision.) Byram and the City both alleged the plaintiff was at least 50% negligent in the operation of his vehicle for failure to drive within the range of his vision, failure to maintain a proper lookout, driving faster than reasonable under the existing conditions, and failure to stop at a posted stop sign. In addition, the City denied negligence in its answer and asserted that it was immune from liability under 75-6101 *et seq.* The jury was instructed on the duty to drive within one's range of vision, the duty of a driver to keep a proper lookout, the duty to drive at a speed reasonable under the existing conditions and to drive at a reduced speed when approaching and crossing an intersection, the duty to stop at a stop sign, and the right of each driver to assume other drivers will obey the law. Other instructions were also given concerning the City's duties and responsibilities to maintain streets and traffic control devices. The jury was also instructed that the plaintiff could not recover if he was found to be more than 50% at fault. During deliberations the jury asked the court for clarification on this instruction.

The jury assessed the following percentages of fault to the parties: Turnbull - 48%; Byram - 17%; City of Hutchinson - 35%. No special questions were submitted to the jury indicating the basis for finding the parties negligent. This court is therefore guided by the rule that a general verdict resolves all controverted issues in favor of the prevailing party and imports a finding on all issues in a case which are not inconsistent with answers to special questions submitted. *Black v. Don Schmid Motor, Inc.* 232 Kan. 458, 474, 657 P.2d 517 (1983).

The appellant Byram contends his negligence, if any, was not the proximate cause of the plaintiff's injuries because the plaintiff's negligence was an intervening cause which was not foreseeable. He argues in his brief:

"No reasonable man can expect a driver to react successfully to a hazard that was invisible a fraction of a second earlier. . . . The facts simply show that there was nothing Gary Byram could have consciously done to avert the accident once the Plaintiff became a visible hazard. Being at the wrong place at the wrong time does not constitute fault when the only warning a party has comes a split second before impact, unless crossing a foggy intersection can be labeled negligent."

To counter this argument the plaintiff points to evidence presented at trial in support of the verdict that Byram was traveling as fast as 15 m.p.h. when the accident occurred, that the investigating officer's original report of the accident stated Byram had indicated he had run the stop sign, and that Byram testified he never saw the plaintiff's approaching vehicle until immediately prior to the collision. The plaintiff contends, based upon this evidence and the instructions given, the jury could have found that the defendant was negligent in either failing to stop at the stop sign, failing to keep a proper lookout, failing to drive within his range of vision, or failing to drive his vehicle at a reasonable speed under the circumstances.

In our opinion the negligence of the plaintiff and Byram was a fact question for the jury. The jury's finding that the plaintiff was negligent is supported by an abundance of evidence, including the plaintiff's own admissions. The uncontroverted evidence in the record establishes the plaintiff saw the traffic lights were not functioning and passed through the foggy intersection without slowing or stopping two times within a matter of minutes prior to his third attempt to cross the intersection, at which time the accident occurred. *He claims not to have seen the four-way stop sign aglow with yellow flashing lights at any time,* although it was in place at least by the time he made his second pass through the intersection, and he passed within several feet of it. Every other witness who observed the intersection after the stop sign was in place testified the stop sign was visible at the point where vehicles entered into the intersection, despite the density of the fog. The traffic signal technician testified that while he observed the response of the traffic to the portable signs until ten minutes before the accident occurred, every vehicle which approached the intersection from any direction properly stopped for the stop signs.

Furthermore, the plaintiff did not stop or exercise any appreciable degree of caution in approaching or crossing the intersection on any of his three attempts to do so. He himself testified he could only see a distance of ten feet, yet he felt no need to stop or decrease his speed when approaching what he believed to be a semi-controlled intersection. He claims he looked to his right and left for oncoming traffic, even though according to his own

testimony such traffic was impossible to see. His erroneous belief that he had the right-of-way over east and west bound traffic on Eleventh Street did not alleviate his duty to maintain a proper lookout, drive within his range of vision, or drive within a reasonable speed under the circumstances. In addition to attempting to look for oncoming traffic, the plaintiff testified he also lifted his foot off the accelerator when crossing the intersection. This conduct falls short of conforming to the degree of care required of one driving under the circumstances involved here. In short, the evidence is sufficient to establish the plaintiff was negligent in each respect alleged by the defendants: failure to drive within his range of vision, failure to maintain a proper lookout, driving faster than reasonable under the existing conditions and failure to stop at a posted stop sign.

In addition there was sufficient evidence to support the jury's finding of 17% negligence on the part of Byram. There was evidence that Byram was traveling as fast as 15 m.p.h. when the accident occurred, that Byram did not see the plaintiff's approaching vehicle until immediately prior to the collision, and that the original police report indicated Byram had told the investigating officer he had run the stop sign. Whether the jury gave credence to the explanation which resulted in changing the report is entirely within the province of the jury.

We deem it unnecessary to review the evidence in more detail to determine whether it supports the finding that Byram was negligent. The negligence of the plaintiff and Byram was a fact question for the jury and on the record here presented we cannot say Byram was not negligent as a matter of law.

The appellant Byram also raises an additional issue concerning the propriety of the instructions given by the trial court which has been considered and determined to be without merit.

A more interesting question is presented concerning the involvement of the City of Hutchinson. If the City was negligent and enjoys immunity under the Tort Claims Act, the plaintiff recovers only 17% of his damages. But if the City was not negligent, the comparative negligence between the plaintiff and Byram must be redetermined. The 35% negligence assigned to the City cannot be left dangling; it must be reassigned by the factfinders to the remaining parties.

Accordingly, we shall review the evidence to determine

whether the City was negligent in any particular. If, as a matter of law, the City is not negligent, the issue as to the City's immunity under the Tort Claims Act is moot.

The plaintiff alleges "[t]his case involves a collision on a street as a result of the street defect. The evidence discloses that the defect was a combination of factors, including heavy fog, a malfunctioning traffic control signal, and the City's failure to exercise ordinary care in addressing these problems."

It must be noted the legislature has specifically repealed the highway defect statutes. This subject was addressed by our court in *Carpenter v. Johnson*, 231 Kan. 783, 785, 649 P.2d 400 (1982). Obviously heavy fog, which is a weather condition, cannot be a ground for negligence on the part of a city.

Here a city employee discovered at 5:30 a.m. that the traffic signals for the two adjacent intersections here in question were not functioning. The traffic signal technician for the City was summoned and arrived at 5:50 a.m. He discovered the signal control box had been struck by a vehicle. The controller was "knocked completely off of the pedestal and the cables torn loose." His immediate assessment was the controller could not be repaired "whatsoever" at that time. Although traffic was light at that time he realized it would increasingly become heavier through the morning rush hour. Within minutes of his arrival he requested a four-way stop sign and two single stop signs be brought to the intersection because "we had to get some type of traffic control out there immediately." These signs arrived at 6:20 and were in place by 6:30 a.m. Because it was getting foggy he instructed that flashing yellow lights be affixed to the four-way stop sign. He then remained at the intersection until 6:45 a.m. observing the response of the traffic to the stop signs. He chose to place those particular signs at the intersection because "it's normal procedure when we have a light that is completely out to bring in four-way stop signs or single stop signs, this is normal procedure it has happened in the past and always worked for us, stop signs do work." He further testified he knows of no manuals or established guidelines concerning the types of devices which should be used in emergency situations such as this one.

The Assistant City Engineer, who is responsible for approving traffic signal plans, testified the Manual on Uniform Traffic

Control Devices, which has been adopted by the State of Kansas and the City of Hutchinson (See, *e.g.*, K.S.A. 8-2003 and 8-2005[*a*]), contains no guidelines relating to emergency situations. He did testify, however, that the manual establishes guidelines for the design and installation of permanent traffic control devices, such as traffic lights at an intersection, and for temporary traffic control devices, such as near a construction area.

The only other consideration that might possibly indicate negligence on the part of the City was the placement of yellow flashing lights on the four-way stop sign at the center of the K-61 - Eleventh Street intersection. Normally the yellow flashing light is designed for caution, not a stop. The red flashing light would indicate the necessity for a stop.

The plaintiff, however, admitted that on his three passes through the intersection he did not see the stop sign or the flashing lights. Thus, the negligence of the City, if any, for the placement of yellow flashing lights instead of red lights could not have been the proximate cause of plaintiff's injuries. Furthermore, with the admission of plaintiff that he could only see for a distance of ten feet as he approached the intersection, other signs on the side of K-61 where plaintiff was approaching the intersection would not have been seen by the plaintiff and their absence would not be a proximate cause contributing to his injuries.

Based upon the record presented we hold, as a matter of law, the City of Hutchinson was not negligent in any manner, and it did not contribute to the plaintiff's injuries.

Accordingly, the judgment of the lower court is reversed with directions to dismiss the City of Hutchinson and grant a new trial to the remaining parties.

HOLMES, J., not participating.