(887 P.2d 1158)
No. 70,676

RYAN NEWTON, *Plaintiff/Appellee*, v. DOYLE D. NICHOLAS, *Defendant/Appellee*, OHIO CASUALTY INSURANCE COMPANY, *Intervenor/Appellant*, SUSAN M. GORDON, *Defendant/Intervenor/Appellee*, and CHRISTY SHEEHAN, *Intervenor/Appellee*.

Opinion filed January 6, 1995.

*Keith K. Couch* and *Katherine C. Opie*, of Couch, Strausbaugh, Pierce & King, Chartered, of Overland Park, for appellant.

*Stephen G. Dickerson*, of Kugler & Dickerson, of Kansas City, for appellee Ryan Newton.

*Louis A. Silks, Jr.*, of Merriam, for appellee Doyle D. Nicholas.

*Richard N. Roe*, of Lowe, Farmer, Bacon & Roe, of Olathe, for appellee Susan M. Gordon.

*Larry E. Benson*, of Kansas City, for appellee Christy Sheehan.

Before BRISCOE, C.J., GERNON, J., and RICHARD A. MEDLEY, District Judge, assigned.

GERNON, J.: Ohio Casualty Insurance Company (Ohio) appeals from the district court's grant of summary judgment in favor of Ryan Newton, Susan Gordon, and Christy Sheehan. The court found that Ohio was liable for injuries sustained by Newton, Gordon, and Sheehan in their underlying personal injury claim. They were injured when the vehicle they were in struck a 500-gallon water tank that had fallen from a flatbed truck driven and owned by Doyle Nicholas.

The injuries occurred when the car driven by Gordon and owned by her father struck the water tank. Gordon's automobile was insured against liability under a policy issued by Metropolitan Property and Liability Insurance Company (Metropolitan) containing a bodily injury limit of liability of $300,000 per occurrence and underinsured motorist coverage with a limit of liability of $300,000 per person/per accident.

Nicholas' truck was insured by Shelter Insurance Company (Shelter) and contained bodily injury limits of liability of $25,000 per person and $50,000 per accident. Nicholas was also insured against personal liability under a policy of homeowners insurance issued by Ohio containing a bodily injury limit of liability in the amount of $100,000 per occurrence.

Newton filed suit against Nicholas and Metropolitan, alleging the accident occurred as a result of Nicholas' negligence in both vehicle- and nonvehicle-related acts and that Metropolitan was liable to the extent Nicholas was underinsured. A series of settlements followed in which Shelter's $50,000 policy limit and Metropolitan's effective underinsured motorist policy limit of $250,000 were divided among Newton, Gordon, and Sheehan.

Newton then filed an amended petition, asserting a cause of action against Nicholas and claiming the collision was caused solely by Nicholas' nonvehicle-related acts of negligence and carelessness in failing to tie down or secure the water tank. Ohio initially denied coverage and refused to defend Nicholas, but, later, Newton, Nicholas, and Ohio agreed that Ohio should intervene in the lawsuit in order to seek a declaratory judgment as to whether it was liable under the homeowners policy issued to Nicholas.

Ohio was allowed to intervene and filed a petition for declaratory relief, claiming that any injuries sustained by Newton, Gordon, and Sheehan as a result of Nicholas' conduct were specifically excluded by the terms and provisions of its homeowner's policy. The parties agreed that should the dispute be resolved in favor of coverage, Ohio's $100,000 policy limit would be paid to and divided by the three claimants in the same manner as the previous settlement amounts had been divided. The parties also agreed that, whether or not the court found in favor of coverage, there would be no further claim against Nicholas personally.

Newton then filed a second amended petition, reiterating his claim against Nicholas and adding a claim against Gordon. Newton alleged that Gordon failed to keep her vehicle under proper control, failed to keep a proper lookout, and drove her vehicle at a speed greater than was reasonable under the existing conditions. Newton and Gordon later agreed to a partial dismissal with prejudice of the claim by Newton against Gordon.

With regard to the declaratory judgment action, the parties filed a joint stipulation of the facts relevant to the dispute. Ohio then filed a motion for summary judgment, as did Newton, Gordon, and Sheehan. The trial court ruled in favor of Newton, Gordon, and Sheehan, finding that Ohio had not sustained its burden of demonstrating that Nicholas' conduct was excluded from coverage under the homeowners policy.

"Summary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). In the present case, none of the material facts are in dispute, suggesting that the matter was ripe for summary judgment.

With regard to the water tank on Nicholas' truck, the parties stipulated as follows.

"14. Nicholas hauled his water in a 500-gallon cylindrical, steel tank which was attached to the steel truck bed of his 1977 Ford F-350 one-ton truck. The principal use of the truck was to haul water in this manner and Nicholas estimates that the tank was attached to the truck 75% or more of the time. It was not uncommon for the tank to be attached to the truck for 30 or more days at a time. Especially during drier periods, Nicholas would haul water every day or multiple times a day for household and stock use.

"15. Nicholas attached the tank to the steel truck bed of the truck by using a heavy 14-foot logging chain which had a chain hook affixed to each end. One end of the chain was hooked to a side of the truck bed, the chain was pulled through and wrapped one time around a handle on the top of the tank, and the other end of the chain was hooked to the other side of the truck bed. The chain was cinched or tightened with the use of a boomer [or come-along], and the handle of the boomer was wrapped with any excess chain and baling wire. [Nicholas had been regularly using this means of attachment without incident for at least six or seven years preceding the accident.]

"16. The tank was approximately six feet long and four feet in diameter. The bed of the truck was 10 feet long and 7 feet 5 inches wide. Even with the tank attached to the truck, the bed areas around the tank were accessible and usable for other hauling purposes.

"17. The boomer involved in the accident has been preserved and is available for inspection by the court. It has not been altered or modified since the accident and is in working order or condition. Apart from the fact that the boomer was unconnected to the logging chain and lying on the roadway after the accident, there is no indication that the boomer failed, was defective, or that it was damaged in the incident.

"18. The boomer involved in the accident was examined by George W. Forman, P.E., Lawrence, Kansas, a consulting mechanical engineer, at the request of Metropolitan. . . . Mr. Forman did not find any defect in the boomer. His report states he doubts that the described means of attachment 'should be considered to be a properly engineered and safe arrangement.'

"19. The logging chain used to attach the tank to the truck bed has been preserved, has been inspected by all parties, and is available for inspection by the court. The chain has not been altered or modified since the accident and is in working order or condition. There is no indication that the chain or chain hooks failed or that the chain or chain hooks were damaged in the incident.

"20. The tank involved in the accident has been preserved, has been inspected by all parties, and is available for inspection by the court. It has not been altered or modified since the accident. It was damaged in the accident. . . .

"21. The truck bed involved in the accident has been preserved, has been inspected by all parties, and is available for inspection by the court. It has not been altered or modified since the accident. There is no indication that the truck bed failed or was damaged in the incident. . . .

"22. Although Nicholas is not positive, he believes he last attached the tank to the truck several days before the accident. Nicholas distinctly recalls having loaded and hauled a tank of water to his farm on January 27, 1991, the day preceding the accident. On the afternoon of the day of the accident, January 28, 1991, Nicholas loaded and hauled a tank of water to his farm and unloaded the water into his well. That evening he returned to Desoto to load and haul a second tank of water. The accident occurred when he was returning home with the second load.

"23. Upon arriving at the water tap in Desoto, he fully loaded the tank with water and began the drive back to his farm. The accident occurred at about 8:00 p.m. Although it had snowed earlier and there was snow along the side of the roadway, the black top roadway was dry and weather was not a factor in the accident.

. . . .

"25. Nicholas does not know how or why the boomer became unfastened or the tank became unattached from the truck. At one point he questioned whether a bump in the roadway might have had something to do with what happened, however, he no longer believes this to be the case. The reporting police officer investigated a 'buckle' in the roadway, but concluded that the area was not a traffic hazard and did not appear to be a contributing factor to the tank falling from Nicholas' truck. Also, the investigating police officer looked and did not find any tire tracks in the snow or other evidence that Nicholas' truck left the roadway at any point.

"26. In order to fill the tank, Nicholas had to climb onto the truck bed. He customarily did this by first stepping on the tire under the driver's side of the bed and using the chain across the tank to help pull himself up. Nicholas did not regularly inspect the attachment of the tank to the truck bed except to the extent he may have noticed something in getting on or off the truck bed. To his knowledge, he did not inspect the attachment of the tank to the truck bed after it was last attached several days earlier or on the day of the accident."

Ohio contends that it has no coverage based upon the following exclusion contained in its homeowners policy issued to Nicholas:

"SECTION II—EXCLUSIONS

"1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

. . . .

e. arising out of:
    (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured**."

"It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 (1974).

Newton, Gordon, and Sheehan counter by arguing that their claims were based upon allegations of both vehicle-related and

nonvehicle-related negligent acts and that the nonvehicle-related acts triggered coverage under the homeowners policy. If their view is correct, then Nicholas was entitled to concurrent coverage under both his automobile policy and his homeowners policy. Newton, Gordon, and Sheehan contend that the injury-producing event was directly and proximately caused by the concurrence of both vehicle-related and nonvehicle-related acts of negligence and, therefore, Ohio's policy exclusion does not preclude coverage for nonvehicle-related acts which concur with vehicle-related acts to cause damage.

The trial court agreed with Newton, Gordon, and Sheehan and found that Nicholas' two acts of negligence—failure to inspect the apparatus securing the tank and failure to properly construct a surface for the tank on the back of the truck—were concurrent, nonvehicle-related acts outside the scope of the automobile exclusion.

While no Kansas cases are directly on point, other jurisdictions have considered this issue with varying results.

The California Supreme Court found coverage available under both a homeowners policy and an automobile policy in the case of *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973). In *Partridge*, Vanida Neilson was paralyzed when, as a passenger in a vehicle driven by Partridge, a .357 Magnum discharged and struck her spinal cord. The gun had previously been modified by Partridge so it would have a "hair trigger action." At the time Neilson was injured, Partridge was hunting jackrabbits by shooting out the window of the vehicle while it was moving and, in order to keep a rabbit within the car's headlights, he was driving off the paved road onto adjacent rough terrain.

The California Supreme Court was left with the question: What was the proximate cause of the injury?

The California Supreme Court stated: "[W]e have no doubt that in the instant case the role played by the use of the car— constituting a substantial, and indeed, a proximate cause of the accident—was certainly sufficient to bring the present accident

within the coverage of the automobile policy. Neither party questions this conclusion." 10 Cal. 3d at 100-01.

The controversy there, as here, focused upon the applicability of the homeowners policy and whether the exclusionary clause in the homeowners policy which denied coverage for injuries " 'arising out of the . . . use . . . of a motor vehicle' " excluded coverage under these facts. 10 Cal. 3d at 101.

The California court further reasoned that the use of the automobile was not the sole cause of the injuries, but was only one of two joint causes of the accident. *Partridge*, 10 Cal. 3d at 102.

Several other jurisdictions have followed California's lead and presently allow coverage under a homeowners or other general liability policy where concurrent nonvehicle-related and vehicle-related acts or causes combine to produce injury or damage. See *Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. App. 476, 477, 479, 763 P.2d 540 (1988) (automobile exclusion clause in housemovers policy did not eliminate insurer's liability where there was evidence of concurrent negligence in both towing of house and preparation of house for movement); *Kalell v. Mutual Fire and Auto. Ins. Co.*, 471 N.W.2d 865, 868 (Iowa 1991) (homeowners policy exclusion for occurrences arising out of the use of motor vehicle did not preclude coverage for injuries received when piece of limb struck victim while insured was removing dead limb from tree by attaching rope and pulling it with truck, because removal of limb with rope could be considered negligent act); *LeJeune v. Allstate Ins. Co.*, 365 So. 2d 471, 479 (La. 1978) (automobile exclusion clause in professional liability policy did not preclude coverage where deputy sheriff failed to properly secure intersection of highways by using his car, because negligence was not related to vehicle); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921, 923 (Minn. 1983) (nonvehicle-related act of placing live embers in open barrels triggered coverage under a homeowners policy when it concurred with the vehicle-related act of driving, causing a nine-day forest fire); *Salem Group v. Oliver*, 128 N.J. 1, 3, 607 A.2d 138 (1992) (homeowner's insurer had duty to defend insured who supplied alcoholic beverage to minor and minor was later injured driving motor vehicle, despite automobile exclusion in

homeowners policy); *Houser v. Gilbert*, 389 N.W.2d 626, 628 (N.D. 1986) (additional nonvehicle-related risks of failure to warn and failure to remove mud from road were also proximate causes of auto accident; exclusionary clause in general farm policy did not preclude coverage); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 888 (Tenn. 1991) (exclusion in homeowners policy for any loss arising out of maintenance of a motor vehicle did not preclude liability where insured negligently advised victim that there were no flammable liquids in garage; other nonexcluded causes played substantial part in injuries); *Warrilow v. Norrell*, 791 S.W.2d 515, 526 (Tex. Civ. App. 1989) (automobile exclusion did not apply even though insured dropped pistol in car while attempting to change a tire; liability could also be based on other grounds of negligence unrelated to the maintenance of the vehicle); *Lawver v. Boling*, 71 Wis. 2d 408, 422, 238 N.W.2d 514 (1976) (case remanded where evidence demonstrated possibility that nonvehicle-related causes contributed to injury; insurer not excused from its duty to defend until court determined injury not a result from a risk for which it provided coverage).

A Minnesota case contained a factual situation close to the present situation. In *North Star Mut. Ins. Co. v. Johnson*, 352 N.W.2d 791 (Minn. App. 1984), Vernon Janssen had an automobile policy with Milwaukee Mutual Insurance and a farm liability policy with North Star Mutual Insurance. Janssen was driving a pickup with a farm sprayer bolted to the bed. One arm of the sprayer unexpectedly extended and smashed into the windshield of a car traveling in the opposite direction, with resulting injuries. The farm policy contained an exclusionary provision similar to the one in the case before us.

Johnson's petition alleged two distinct negligence claims: (1) Janssen failed to operate his pickup truck at a safe and reasonable speed, and (2) Janssen failed to properly secure the arms of the sprayer to the sprayer unit. The court stated:

"Had the *truck* rather than the sprayer arm collided with the Johnson car, the exclusion would have precluded coverage because the accident would have arisen solely out of operation of the vehicle. However, the actual accident allegedly resulted from two independent causes—Janssen's negligence in operating the vehicle *and* in securing the sprayer arms to the unit." 352 N.W.2d at 794.

The opposite result was reached in the case of *Columbia Mut. Casualty Ins. Co. v. Coger*, 35 Ark. App. 85, 811 S.W.2d 345 (1991). In *Coger*, a lumber truck was delivering lumber on a state highway when part of the load fell off the truck, landed on the highway, and collided with a van traveling in the opposite direction, injuring its occupants. The court held that "whether or not the lumber briefly came to rest before being struck by the van, and whether the negligent act was the operation of the vehicle, the securing of the load, or the maintenance of the straps securing the load, the injury and damage clearly arose out of the ownership, maintenance, or use of the truck or attached equipment and was therefore not covered by the policy." 35 Ark. App. at 88.

Courts have struggled with the concurrent liability question. For example, in *Allstate Ins. Co. v. Jones*, 139 Cal. App. 3d 271, 188 Cal. Rptr. 557 (1983), the insured owned a pickup truck which was equipped with an open-ended, overhead steel rack used to store and transport steel reinforcing rods. The truck, loaded with 14 pieces of reinforcing rod, was involved in a collision, and the driver of the other vehicle was killed. The court found that both acts of negligence which occurred to cause the death of the other driver were auto-related, and, therefore, the exclusion in the insured's comprehensive general liability policy applied.

In *North Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452 (Iowa 1987), the court determined that an auger permanently attached to a truck was included in the policy's definition of a motor vehicle. The key in *Holty* seemed to be the permanent attachment of the auger to the truck and that the accident arose "out of negligent maintenance of the external condition of the truck." 402 N.W.2d at 455.

The question squarely before us is whether the events giving rise to Nicholas' liability arose out of the "ownership, maintenance, use, loading or unloading of motor vehicles . . . owned or operated by or rented or loaned" to Nicholas. In order to find liability coverage exists under the homeowners policy issued by

Ohio, one or more concurrent causes of the resulting harm must be found to exist independently of any use of the truck.

The language of the exclusion must be given its plain, ordinary meaning. See *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 (1984). "Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense." *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 130, 468 P.2d 157 (1970). Similarly, courts should not strain to create an ambiguity where, in common sense, there is none. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300, 806 P.2d 993 (1991). An insurance contract may only be found ambiguous when, after the application of the relevant rules of interpretation, the words intended to express the meaning and intent of the parties may be construed to reach more than one possible meaning. *Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kansas, Inc.*, 15 Kan. App. 2d 314, 319, 807 P.2d 1319, *rev. denied* 249 Kan. 775 (1991).

The specific negligent acts alleged by the claimants to be non-vehicle-related include Nicholas' failure to inspect and properly secure the water tank to the truck. The parties stipulated that the principal use of the truck was to haul water. The tank was attached to the truck 75% of the time, and, while it was not uncommon for the tank to be attached 30 days or more at a time, the stipulated facts reflect that it was not permanently affixed to the truck as was the auger in *Holty*.

Ohio contends that Nicholas' efforts or lack thereof to inspect and properly secure the tank are acts regarding the maintenance of the truck as a vehicle for hauling water. It also argues the baling wire, boomer, and logging chain had no purpose apart from their use on the truck, and that, in order to "use" the truck for its intended purpose, Nicholas had to secure the tank to the flatbed

with the various attachment devices. Therefore, the inspection and attachment of the tank were inherently tied to the use of the truck.

We are not persuaded, based upon the facts presented here, that the failure to inspect and properly secure the tank was a concurrent cause of the injury existing independently from Nicholas' use of the truck. Coverage is properly excluded only when the use of a motor vehicle is causally connected with the liability-producing event. "Causally connected" should not be confused with proximate causation and means only that there be a connection between the accident and the use of the vehicle. Before the doctrine of concurrent negligence can be applied, the non-vehicle-related negligence must exist separately and independently from any vehicle-related negligence.

There is no question that the activity in the present case involved the direct use of a motor vehicle. The negligence which occurred in this case by hauling a water tank that had not been properly inspected or secured to the truck bed does not exist independent of the ownership, maintenance, use, and loading and unloading of the vehicle. The injury occurred in this case because the water tank was being negligently hauled by a motor vehicle, and Nicholas' negligent actions in failing to inspect the apparatus holding the tank to the truck bed and his failure to properly secure it in the first place were directly connected to the transportation of the tank and do not exist independently from the use of the truck. In other words, following the reasoning in *Allstate Ins. Co. v. Jones*, the failure to inspect and properly secure the tank implicitly and logically refers to the failure to do so *on the truck*.

This case is factually distinguishable from *State Farm Mut. Ins. Co. v. Partridge*. In *Partridge*, the negligent act of filing the trigger to lighten its pull and give the gun a hair trigger effect was totally unrelated to the use of the vehicle. The increased risk of anyone coming in contact with or near such a weapon is obvious. In the present case, every act which occurred leading to the claimants' injuries was directly connected with the hauling of the water tank by use of a motor vehicle, an event excluded by the policy provision at issue.

The judgment of the district court is reversed, and this matter is remanded with directions to enter summary judgment in favor of Ohio.

Reversed and remanded.