**The ESTATE OF Amanda PENNINGTON, by and through its personal representative James E. PENNINGTON, et al., Plaintiffs,**

v.

**Masey V. WOLFE, et al., Defendants.**

**No. 02–2228–JWL.**

United States District Court,
D. Kansas.

May 15, 2003.

Matthew L. Bretz, Juhnke & Bretz, Hutchinson, KS, for plaintiffs.

Todd N. Thompson, Thompson & Associates, Lawrence, KS, for defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This diversity action involves an insurance coverage dispute arising out of a tragic automobile accident. A piece of farm equipment fell out of the bed of a pick-up truck and landed on the highway. A second pick-up truck occupied by two minors hit the farm equipment, veered left into oncoming traffic and struck a semi-tractor, killing both minors. Defendants in this action are the individual who drove the first pick-up truck and his parents, who own the farm equipment in the bed of the truck. Defendants have insurance coverage under a motor vehicle liability policy and a farm and ranch policy. Plaintiffs (the parents of the deceased minors, who are named plaintiffs and who are also bringing the case on behalf of their children's estates) previously settled all claims against defendants arising out of the accident except for any claims covered by defendants' farm and ranch policy. Plaintiffs now bring this lawsuit in an attempt to recover from defendants under that policy.

The matter is currently before the court on defendants' motion for summary judgment (Doc. 15). The motion argues that the farm and ranch policy's motor vehicle exclusion applies to preclude coverage for plaintiffs' current claims, that the language of the parties' previous settlement agreement precludes coverage under the farm and ranch policy, and that defendants are not the real parties in interest in this action. The court cannot agree with any of these contentions and, therefore, denies defendants' motion for summary judgment for the reasons set forth in detail below.

## I. UNCONTROVERTED FACTS

The automobile accident giving rise to this action occurred on Highway 96 in front of defendants' family farm in Greeley County, Kansas, on June 25, 2000. After unloading hay from a pick-up truck, defendant Masey Wolfe exited his parents' private driveway on the west end of the family farm, turned left (east) onto Highway 96, and traveled east on Highway 96 for approximately 200 feet. At the time that he drove the pick-up truck onto Highway 96, there was a piece of farm equipment (a tail shaft) in the bed of the truck, and the truck's tailgate was down. As he was driving the approximately 200 feet on Highway 96 between the west and east driveways, he heard the tail shaft skid or move across the bed of the pick-up. He then realized that the tail shaft may have fallen out of the bed of the pick-up. The tail shaft did fall from the pick-up and came to rest in the eastbound lane of traffic on the highway. A pick-up truck occupied by two minors, James and Amanda Pennington (one was driving and the other was a passenger), hit the tail shaft and veered left into the westbound lane of traffic, colliding with a semi-tractor.

The facts regarding Masey Wolfe's actions after the tail shaft fell are contested. Defendants contend that he turned left (north) into the second (east) driveway, parked his pick-up truck, looked to the highway, saw the tail shaft on the highway, noticed the westbound traffic, and then observed plaintiffs' eastbound pick-up approaching the tail shaft. Plaintiffs, however, controvert that allegation. They point to the testimony of two eye witnesses who, in essence, state that they did not see Masey Wolfe near the accident. The amount of time that lapsed between the tail shaft falling and the pick-up hitting the tail shaft is also in dispute. Defendants point to Masey Wolfe's testimony that the time gap was between 40 and 150 seconds. Plaintiffs, on the other hand, argue that it is reasonable to infer from their eye witnesses' testimony (they testified that Masey Wolfe was not near the scene at the time the accident occurred) that Masey

Wolfe would have no way of accurately stating how long the tail shaft was on the highway.

Masey Wolfe's parents, Randy and Carrie Wolfe, own the pick-up Masey was driving and are the other two defendants in this action. Masey Wolfe resided with his parents at the time of the accident. The pick-up was covered by an automobile liability insurance policy which provided policy limits of $100,000 per person per accident. Plaintiffs sued defendants in state court in Greeley County, and defendants paid the policy limits to plaintiffs pursuant to a settlement agreement and release executed by the Penningtons (the parents of the deceased). Judgment was entered in the Greeley County case by a journal entry dated March 5, 2001, approving the settlement between the Penningtons and the Wolfes (as well as the Wolfes' insurance company). The settlement agreement and release was approved by the state court judge and incorporated into the court's journal entry.

Defendants also have a farm and ranch insurance policy. The policy was in effect on the day of the accident. The farm and ranch policy contains a motor vehicle exclusion. Under the settlement agreement, plaintiffs reserved the right to sue defendants for claims covered by the farm and ranch policy. Plaintiffs also documented their intent to reserve such claims in the settlement hearing in the state court case. They now bring this action to recover on claims covered by the farm and ranch policy.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to

satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. DISCUSSION

Defendants move for summary judgment on three grounds: (1) plaintiffs' claims fall within the motor vehicle exclusion in defendants' farm and ranch policy; (2) the language in the settlement agreement bars coverage under the farm and ranch policy; and (3) defendants are not the real parties in interest.

### A. Motor Vehicle Policy Exclusion

Plaintiffs settled all claims against defendants arising out of the accident except for any claims for which there is insurance coverage provided by defendants' farm and ranch policy. Defendants argue that plaintiffs' negligence claim in this action is not covered by that policy because the claim falls within the policy's motor vehicle exclusion. That exclusion provides in pertinent part:

Section II Coverages and Exclusions

\* \* \* \* \* \*

Exclusions Applicable to Coverage G—Liability and Coverage K—Medical Payments

\* \* \* \* \* \*

3. We do not cover bodily injury or property damage:

\* . \* \* \* \* \*

q. arising out of the ownership, maintenance, use, loading or unloading, or entrustment to others of:

\* \* \* \* \* \*

ii. motor vehicles owned or operated by . . . any insured.

Plaintiffs respond that their complaint does not make any allegation of negligent operation of a motor vehicle. Moreover, they contend, even if there is an allegation that falls within the motor vehicle exclusion, they have alleged separate causation from defendants' failure to immediately remove the farm equipment from the highway or warn that the equipment was on the highway. In other words, they argue that their claims are based upon allegations of both vehicle-related and nonvehicle-related acts of negligence and that under Kansas law the nonvehicle-related acts trigger coverage under the farm and ranch policy. That is, the injury-producing event was directly and proximately caused by the concurrence of both vehicle-related and nonvehicle-related negligent acts, and the motor vehicle exclusion does not preclude coverage for nonvehicle-related acts which concur with vehicle-related acts to cause damage. The court agrees.

Many courts have addressed the issue of whether there is coverage under a policy in a situation where there is an excluded act and a covered act that combine to cause injury. Under Kansas law, like a majority of states, a general liability policy provides coverage if concurrent nonvehicle-related and vehicle-related acts

of negligence combine to produce injury or damage. *Newton v. Nicholas*, 20 Kan. App.2d 335, 887 P.2d 1158 (1995) (citing numerous state court opinions holding as such).[1] This is known as the concurrent cause doctrine. Because Kansas has adopted the concurrent cause doctrine, in order to find liability coverage exists under the farm and ranch policy, one or more concurrent causes of the resulting harm must be found to exist independently of any use of defendants' truck.

Plaintiffs allege that the following negligent acts concurred to cause their injuries: (1) failing to secure the farm equipment in the truck; (2) failing to remove the farm equipment from the highway; (3) and failing to warn that the farm equipment was on the highway.[2] They contend that the latter two causes or acts are independent of any use of a motor vehicle, and coverage therefore exists under the farm and ranch policy. Defendants, on the other hand, argue that each of the acts in this case involved or arose out of the direct use of a motor vehicle. Thus, according to defendants, the motor vehicle exclusion should apply.

Defendants rely on the Kansas Court of Appeals' opinion in *Newton*, 20 Kan.App.2d at 335, 887 P.2d 1158. In *Newton*, a 500-gallon water tank fell from the back of the insured's flatbed truck and struck another car, injuring the driver and two other passengers. The insured had both a motor vehicle policy and a homeowners policy. After the parties settled all claims covered by the insured's motor vehicle policy, one of the passengers sued the insured attempting to recover under the homeowners policy by claiming that the collision was caused by the insured's nonvehicle-related act of failing to tie down or secure the water tank to the truck. After the parties stipulated to the pertinent facts, the trial court ruled that the insurance company (which intervened on behalf of the insured) had not sustained its burden of demonstrating that the insured's conduct was excluded from coverage under the motor vehicle exclusion in the homeowners policy. The Kansas Court of Appeals reversed, finding that none of the concurrent causes of the resulting harm existed independently of any use of the truck. *Id.* at 342–45, 887 P.2d 1158.

In reaching that result, the court first discussed and adopted the concurrent cause doctrine. The court noted that the plaintiff allegedly was negligent in two respects: first, in failing to operate his truck at a safe and reasonable speed; and second, in failing to properly secure the water tank to the truck. The court then explained that before "the doctrine of concurrent negligence can be applied, the

---

1. When presented with a question of Kansas law that the Kansas Supreme Court has not resolved, the court's task is to predict how that court would rule on the issue. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1207 n. 1 (10th Cir.2002) (citing *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984)). In carrying out this task, the court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise." *Id.* (citations omitted). Although the court recognizes that a minority of states have rejected the concurrent cause doctrine, defendants do not provide the court with a persuasive reason to conclude that the Kansas Supreme Court would reach a decision contrary to *Newton*, which the court therefore follows as Kansas law.

2. A jury must determine whether defendants were in fact negligent. *See, e.g., Turnbull v. Byram*, 235 Kan. 891, 896, 684 P.2d 429, 434 (1984)(noting that the issue of whether the defendant was negligent is a fact question for the jury). But, because defendants do not argue that the uncontroverted facts demonstrate that they were not negligent in the respects plaintiffs contend, for purposes of this motion the court presumes that defendants were negligent in each respect.

nonvehicle-related negligence must exist separately and independently from any vehicle-related negligence." *Id.* at 344, 887 P.2d 1158. Finally, the court concluded that the negligent act of failing to properly secure the water tank to the truck did not exist independent of the ownership, maintenance, use, or loading and unloading of the truck. The court reasoned that the injury occurred because the water tank was being negligently hauled by a truck, and the insured's negligent act in failing to properly secure the tank to the truck was directly connected to the transportation of the water tank and did not exist independently from the use of the truck. Put another way, the court found that the failure to inspect and properly secure the tank "implicitly and logically [referred] to the failure to do so *on the truck.*" *Id.* at 345, 887 P.2d 1158 (emphasis in original).

In the last paragraph of the opinion, the court distinguished its holding from the California Supreme Court's opinion in *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973). In *Partridge,* perhaps the seminal case on this view of concurrent causation, the plaintiff was paralyzed by a gunshot that struck her spinal cord. She was a passenger in the insured's truck while the insured hunted jackrabbits by shooting out the window of his moving truck. The insured was using a .357 Magnum he had previously modified so that it would have a "hair trigger action." In order to keep a rabbit within the truck's headlights, the insured drove off the paved road onto rough terrain. The vehicle hit a bump, the pistol discharged, and a bullet struck the plaintiff. At the time of the accident, the insured was either holding the gun in his lap or resting it on top of the steering wheel pointed at the plaintiff.

The California Supreme Court was presented with the issue of whether coverage existed under the insured's homeowners policy (as well as his automobile policy) or whether the motor vehicle exclusion in that policy applied to exclude coverage. The insurance company (on behalf of the insured) argued that because the use of the car played some causal role in the accident, the injuries arose out of the use of the car within the meaning of the motor vehicle exclusion. The court disagreed. It first noted that when a covered risk and a noncovered risk "constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *Id.* at 129. Next, the court concluded that the negligent act of filing the pistol's trigger mechanism was a risk covered by the homeowners policy. That is, "if the gun had accidentally fired while the insured was walking down the street or running through the woods, the insurer admits that any resulting damage would clearly be covered by the policy." *Id.* Thus, even though the accident occurred in a vehicle, the insured's negligent modification of the pistol sufficed, in itself, to render him fully liable for the resulting injuries. As a result, the court concluded that the insured's homeowners policy applied to provide coverage for the alleged negligent acts. *Id.*

The Kansas Supreme Court distinguished the factual situation in *Partridge* by noting that the negligent act in *Partridge* of filing the trigger was totally unrelated to the use of the truck. *Newton,* 20 Kan.App.2d at 345, 887 P.2d 1158. In *Newton,* by contrast, "every act which occurred leading to the claimants' injuries was directly connected with the hauling of the water truck by use of a motor vehicle, an event excluded by the policy provision at issue." *Id.*

 In this action, the court believes the facts are more analogous to those in *Partridge.* Here, plaintiffs contend defendants committed two nonvehicle-related

acts of negligence—failing to remove the farm equipment from the highway and failing to warn that the farm equipment was on the highway. It is well settled that a person who creates a dangerous condition on a highway has a duty to use reasonable care to avoid injury to others by either removing the hazard or warning others of it. *Cuddy v. Tyrrell,* 171 Kan. 232, 235–36, 232 P.2d 607 (1951) (holding that a jury question existed as to whether a trucking company that tracked mud and slime onto the highway and failed to remove it or warn others was negligent); *Haas v. Firestone Tire & Rubber Co.,* 563 P.2d 620 (Okla.1976)(citing *Cuddy,* 171 Kan. at 235–36, 232 P.2d 607) (holding that "a person who creates a dangerous condition on the public roadway by spillage or trackage of mud or debris thereon, has a duty to the general public to either remove the hazard or to give warning in some manner"); *Simonsen v. Thorin,* 120 Neb. 684, 234 N.W. 628 (1931) (holding that a person who places an obstacle in the street must either remove it or warn others of its existence). The duty is not limited to individuals who are driving motor vehicles on the highway. The rule is extrapolated from the broader principal that an actor who creates a hazardous condition has a duty to use reasonable care to warn others of the condition or to correct it. *See, e.g.,* Restatement (Second) of Torts, § 321 (1965); William L. Prosser, *The Law of Torts* § 56, at 342–43 (4th ed.).

Because there is an independent duty to remove hazards from the highway or warn others of the hazard, this case is distinguishable from *Newton.* Unlike in *Newton* where the water tank fell directly onto an oncoming vehicle, in this action defendants concede that the farm equipment fell onto the highway for a period of time before plaintiffs' vehicle struck it. Thus, the act of failing to remove the farm equipment from the highway or warn others was not inextricably intertwined with driving a motor vehicle. In fact, as plaintiffs argue, if the defendant had walked onto the highway, dropped the farm equipment, and then proceeded to walk away, the same duty to warn or remove the equipment would have arisen. Thus, as in *Partridge,* the insured's negligent acts of failing to remove the equipment or warn others (acts which are completely independent and separate from the use of an automobile) suffice, in themselves, to render him fully liable for the resulting injuries. This action, then, involves one or more potential causes of the resulting harm that exist independently of any use of defendants' truck. If the trier of fact concludes that defendants were negligent in failing to remove the farm equipment from the highway or warn others and that negligence, at least in part, caused the resulting injury, then the farm and ranch policy provides coverage because those causes exist independently of any use of defendants' truck.

The Supreme Court of North Dakota reached the same result in *Houser v. Gilbert,* 389 N.W.2d 626 (N.D.1986), a case involving similar facts which the court cited in *Newton,* 20 Kan.App.2d at 342, 887 P.2d 1158. In *Houser,* the court held that there is "concurrent coverage under both an auto policy and a general liability policy where a vehicle-related act of negligence and a nonvehicle-related act of negligence are involved in the same accident." *Id.* at 631. The case was a wrongful death action which arose out of the head on collision of two semi-trucks. A sugar beet truck deposited mud and dirt on a highway while transporting sugar beets. Later, the driver of a semi-truck traveling on the highway lost control of his truck—because of the slippery conditions caused by the mud—and collided with another semi-truck. The owner of the sugar beet truck was insured by two motor vehicle policies and a farm liability policy. The trial court

found that the loss was caused by "both vehicle-related acts (use of the trucks to deposit dirt and mud on the highway) and nonvehicle-related acts (failure to remove the mud from the highway once deposited or to warn of the danger)." *Id.* at 628. The North Dakota Supreme Court later concluded that all three policies provided coverage stating, "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Id.* at 631 (quoting *Partridge,* 109 Cal.Rptr. 811, 514 P.2d at 125). *Houser* is indistinguishable from the facts in this action and the court finds it persuasive.

Defendants also rely on the Kansas Court of Appeals' opinion in *United Serv. Auto. Assoc. v. Morgan,* 23 Kan.App.2d 987, 939 P.2d 959. In *Morgan,* three young men approached a red light and stopped next to a woman alone in her vehicle. As both vehicles waited at the red light, the young man in the backseat of the vehicle yelled obscenities at the woman and shook his fists at her. The driver of the vehicle then revved the engine and the vehicle rocked back and forth. As the stoplight turned green, the vehicle occupied by the young men veered sharply into the woman's lane. In fear of the young man in the backseat yelling at her and in an attempt to avoid a collision with the vehicle veering at her, the woman turned her vehicle to the right and struck the curb. This impact caused her head to hit the steering wheel and snap back against the seat and she fell to the floor of her vehicle. The woman contended that as a result of the injuries, she had been diagnosed with brain disfunction and cognitive impairment. She brought an action against the driver of the vehicle, the young man in the backseat of the vehicle, and the young man in the backseat's parents (who owned the vehicle). The plaintiff settled the claims against the driver, leaving only the young man in the backseat and his parents as defendants. The woman sought to recover under the defendants' homeowners policy and automobile liability policy.

The issue before the Kansas Court of Appeals was whether the homeowners policy's motor vehicle exclusion applied to negate coverage for the negligence claim against the defendants. The court concluded that the exclusion did apply and that the negligence claim was therefore excluded from coverage. *Id.* at 993–98, 939 P.2d 959. The court reasoned that the vehicle was inextricably intertwined with the defendant's actions. It noted that the defendant hurled insults at the plaintiff from a running motor vehicle while the plaintiff was stopped at a red light. It also pointed out that if the defendant had been standing on a street corner hurling threats and insults, the plaintiff could have driven away. The vehicle, then, added to the threatening manner of the insults. The court rejected the defendant's argument that his actions were separate and independent of the driver's actions. The court noted that the driver's actions and the defendant's actions took place at the same time and in the same running automobile. Also, without the defendant's screaming threats, the driver's actions in revving the engine and veering toward the plaintiff would not have seemed nearly as intimidating and may not have occurred. *Id.*

*Morgan* is distinguishable from the facts in this action. Unlike *Morgan,* here defendants' acts of failing to remove the farm equipment from the highway or warn others of it are separate and independent from the other negligent acts (failing to properly secure the farm equipment in the truck) alleged in the negligence claim. Also, defendants' acts of failing to remove the farm equipment from the highway or warn others of it are not inextricably intertwined with the use of an automobile. As noted above, defendants concede that the

farm equipment fell onto the highway for a period of time before plaintiffs' vehicle struck it. This action, then, involves one or more potential causes of the resulting harm that exist separately and independently of any use of defendants' truck. If plaintiffs are able to prove at trial that defendants were in fact negligent in failing to remove the farm equipment from the highway or warn others of it and that the negligent act caused plaintiffs' injury, then defendants' homeowners policy provides coverage. As such, the court denies defendants' motion for summary judgment.

### B. Settlement language bars coverage

Next, defendants argue that there is no insurance coverage because they (the insureds) are not legally obligated to pay. They contend that the settlement agreement "released [them] from any personal and/or excess exposure" arising from the accident. And, they add, the farm and ranch policy obligates the insurer to pay only sums that an "insured becomes legally obligated to pay as compensatory damages because of bodily injury." Defendants reason, therefore, that because they have been released and cannot become legally obligated to pay compensatory damages arising out of the accident, the farm and ranch policy does not provide coverage. The court cannot agree.

Although defendants were released from any personal and excess exposure arising from the accident, the settlement agreement, the journal entry which was approved by the state district court, and the transcript of the settlement hearing all state that plaintiffs reserved any and all claims against defendants which may be covered by defendants' farm and ranch policy. Thus, their intent clearly was not to release them from those claims for which there would be coverage. *See State*

*Farm Mut. Ins. Co. v. Kroeker,* 234 Kan. 636, 645–46, 676 P.2d 66 (1984) (permitting the plaintiff, who had agreed to accept the policy limits of the insured's automobile policy from the insured's insurance company as a partial settlement of a claim, to bring a lawsuit against the insured to obtain full satisfaction of the claim). As such, defendants' motion for summary judgment on this issue is denied.

### C. Defendants are not the real parties in interest

Lastly, defendants contend that because the settlement agreement released them from any personal or excess exposure, they are not the real parties in interest. Defendants contend that Farm Bureau (the insurance company that issued the farm and ranch policy to defendants) is the real party in interest, and plaintiffs should assert their claims "against Farm Bureau" and "against a policy of Farm & Ranch insurance," as stated in the settlement agreement. The court cannot agree.

Defendants reasoning is again based on the notion that they have been relieved of liability in all respects. This is not the case. Plaintiffs clearly reserved the right to bring an action against defendants for any claims that are covered by defendants' farm and ranch policy. Thus, they are the real parties in interest, not the insurance company. It is they who must be found liable on one or more claims which would be covered by the policy in order for the issuer of the policy to have any duty to pay. As such, defendants' motion for summary judgment on this ground is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (Doc. 15) is denied.