(637 P.2d 491)
No. 52,948

FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant,* v. KAREN M. EVANS, DAVID EVANS, MIKE EHINGER, DANNY IRELAND, KATHY ROSE, *Appellees,* and FARMERS INSURANCE COMPANY, INC., *Appellant.*

Petition for review denied March 11, 1982.

Opinion filed December 10, 1981.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for appellant Farm Bureau Mutual Insurance Company, Inc.

*Edward M. Boyle,* of Payne & Jones, Chartered, of Olathe, for appellant Farmers Insurance Company, Inc.

*Thomas R. Martindale,* of Overland Park, and *David P. Woodbury,* of Nugent and Short, Chartered, of Overland Park, for appellees Karen M. Evans and David Evans.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

ABBOTT, J.: This is an appeal by two automobile liability insurance carriers from an order granting summary judgment against them holding that the respective policies issued by them provided coverage for the accident in question.

The determinative issue in this case is whether liability for bodily injury caused by the throwing of a lighted firecracker (M-80) from the rear of a parked station wagon "arose out of the use of an automobile" so as to be covered under the automobile liability insurance policies in issue.

On April 28, 1979, a going-away party was being held for David and Karen Evans. The party was held in a large, open field. Several bonfires were going; keg beer was available. It started to rain and turn cold. Damon Rose (not a party to this action), at his wife's request, parked the Roses' station wagon so that the back seat was facing a bonfire. The Rose station wagon has three seats, the back one of which faces the rear of the station wagon. The tailgate was open. Mike Ehinger was sitting in the middle of the back seat facing the fire. Kathy Rose and Danny Ireland were beside him. It is alleged that Ehinger, with the aid of Rose and Ireland, lit an explosive device known as an M-80 and threw it out of the rear of the station wagon. It landed in a glass of beer held by Karen Evans. When it exploded, Karen Evans received extensive damage to her hand and a number of puncture wounds to her body from the shattered glass.

The Evanses are plaintiffs in a personal injury action brought against Kathy Rose, Mike Ehinger and Danny Ireland for Karen's personal injuries sustained as a result of the explosion. Farm Bureau Mutual Insurance Company, Inc., insures the Rose automobile and Farmers Insurance Company, Inc., insures an automobile owned by Mike Ehinger. Both policies provide coverage for bodily injury "arising out of the ownership, maintenance or use" of the insured vehicle.

The question before the trial court was whether the two policies provided coverage for Mike Ehinger, Danny Ireland and Kathy Rose, or any of them, with regard to claims made against them by the Evanses. The trial court determined that there was coverage because the automobile was being used as shelter, a reasonable incident of its use and one reasonably contemplated by the parties to the insurance contract.

The policy provision in question is mandated by the legislature. K.S.A. 1980 Supp. 40-3107(*b*). As an automobile liability coverage clause, it is to be interpreted broadly to afford the greatest possible protection to the insured. *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580, 584 P.2d 1264 (1978). In the case before us, the trial court found the vehicle was being "used" within the meaning of the coverage clause because of its use as a shelter. But mere use of a vehicle, standing alone, is not sufficient to trigger coverage. Thus, even though the vehicle was being used within the meaning of the automobile liability policies, the question remains whether that use is so remote from the negligent act that it can be said there was no causal relationship between the use of the car and the injuries sustained.

Kansas has construed the word "use" in connection with automobile liability policies on three occasions: *Alliance Mutual Casualty Co. v. Boston Insurance Co.,* 196 Kan. 323, 411 P.2d 616 (1966); *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.,* 193 Kan. 7, 392 P.2d 107 (1964); *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580. None of these cases is exactly in point, but language found in *Esfeld* indicates Kansas follows the majority rule that there must be some causal connection between the use of the insured vehicle and the injury. In *Esfeld,* the court stated:

"In determining the coverage of a policy such as our present one a court must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected." 193 Kan. at 11.

The general rule in other jurisdictions is that "arising out of the use" of a vehicle requires the finding of some causal connection or relation between the use of the vehicle and the injury. *E.g., Richland Knox Mutual Insurance Company v. Kallen,* 376 F.2d 360 (6th Cir. 1967); *Government Employees Insurance Company v. Melton,* 357 F. Supp. 416 (D.S.C. 1972), *aff'd in unpublished opinion,* 473 F.2d 909 (1973); *Mazon v. Farmers Insurance Exchange,* 107 Ariz. 601, 491 P.2d 455 (1972); *Speziale v. Kohnke,* 194 So. 2d 485 (La. App. 1967); *National Family Ins. Co. v. Boyer,* 269 N.W.2d 10 (Minn. 1978); 7 Am. Jur. 2d, Automobile Insurance § 194, p. 703; Annot., 89 A.L.R.2d 150, 153; 8 Blashfield, Automobile Law & Practice § 317.1, p. 5; 12 Couch on

Insurance 2d § 45:56. Stated another way, an injury does not arise out of the "use" of a vehicle within the meaning of the coverage clause of an automobile liability policy if it is caused by some intervening cause not identifiable with normal ownership, maintenance and use of the insured vehicle and the injury complained of. *Kangas v. Aetna Casualty Co.,* 64 Mich. App. 1, 235 N.W.2d 42 (1975); *Norgaard v. Nodak Mutual Insurance Company,* 201 N.W.2d 871 (N.D. 1972); *Plaxco v. U. S. Fidelity & Guaranty Co.,* 252 S.C. 437, 166 S.E.2d 799 (1969); *State Farm Ins. v. Centennial Ins.,* 14 Wash. App. 541, 543 P.2d 645 (1975). The provision, however, imparts a more liberal concept of a causation than "proximate cause" in its traditional, legal sense. *Watson v. Watson,* 326 So.2d 48 (Fla. Dist. Ct. App. 1976); *Dairyland Insurance Co. v. Concrete Products Co.,* 203 N.W.2d 558 (Iowa 1973); *Shinabarger v. Citizens Ins. Co.,* 90 Mich. App. 307, 282 N.W.2d 301 (1979); *Cameron Mut. Ins. Co. v. Ward,* 599 S.W.2d 13 (Mo. App. 1980); *State Farm Ins. v. Centennial Ins.,* 14 Wash. App. 541; 7 Am. Jur. 2d, Automobile Insurance § 194, p. 703; 8 Blashfield, Automobile Law & Practice § 317.1, pp. 5-6; 12 Couch on Insurance 2d § 45:56, p. 147.

We need not decide whether a different result might be reached if the vehicle had been in motion at the time. Some courts have held that if a vehicle is moving and the speed of the car contributed to the impact of a thrown missle, such would be a sufficient causal connection. Likewise, the mere throwing of the contents of an ashtray or other trash normally found in a vehicle could constitute a use. The throwing of an explosive device from a car, however, has generally been held to be so remotely connected with the use of the vehicle that it is not causally related to the injury. *Kraus v. Allstate Insurance Company,* 379 F.2d 443 (3rd Cir. 1967); *Wirth v. Maryland Casualty Company,* 368 F. Supp. 789 (W.D. Ky. 1973), *aff'd in unpublished opinion,* 497 F.2d 925 (1974); *McDonald v. Great American Insurance Company,* 224 F. Supp. 369 (D.R.I. 1963); *Speziale v. Kohnke,* 194 So.2d 485.

The use of the Roses' vehicle did not causally contribute to Karen's injuries anymore than it would have if one of the occupants, under the facts present in this case, had shot her with a firearm. The fact that the M-80 was lit inside the vehicle and the defendants might have had difficulty lighting it *if* no shelter had been available is so remote that it does not furnish the necessary

causal relationship between the use of the car and her injuries. We see no more difference in the use of the vehicle here under the facts present than if the owner of the vehicle had been outside the car and in order to avoid the rain had held the device under the car or stood on the "leeward" side of it to light the device.

Having concluded the trial court erred in determining that the insurance policies in question provided coverage, we deem the remaining issues moot.

Reversed with directions to enter judgment for the insurance carriers on their motions for summary judgment.