No. 71,055

Tad Garrison, *Appellant,* v. State Farm Mutual Automobile Insurance Company, *Defendant/Counterclaimant/Appellee,* and Dairyland Insurance Company, *Intervenor/Counterclaimant/Appellee,* and Kurt Pfannenstiel, *Counterclaimant/Defendant/Appellee.*

(907 P.2d 891)

Opinion filed December 8, 1995.

*Larry D. Tittel,* of Ness City, argued the cause and was on the brief for appellant.

*James D. Oliver,* of Foulston & Siefkin, L.L.P., of Wichita, argued the cause for appellees, and *Stephen M. Kerwick,* of the same firm, was on the brief for appellee State Farm Mutual Automobile Insurance Co.

*Mary Giovanni,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita appeared, and *Arthur S. Chalmers,* of the same firm, was on the brief for appellee Dairyland Insurance Company.

The opinion of the court was delivered by

SIX, J.: This is a first-impression automobile insurance coverage case arising from a hunting accident. A shotgun accidentally discharged, injuring Tad Garrison, plaintiff, while Kurt Pfannenstiel, defendant, removed it from Garrison's car. Garrison's car was insured by State Farm Mutual Automobile Insurance Company (State Farm). Pfannenstiel's car was insured by Dairyland Insurance Company (Dairyland).

The district court held that the State Farm and Dairyland policies did not provide liability coverage; the Court of Appeals reversed the district court. The State Farm policy also provided personal injury protection (PIP) benefits for the injuries to Garrison. *Garrison v. State Farm Mut. Auto. Ins. Co.*, 20 Kan. App. 2d 918, 894 P.2d 226 (1995).

We granted State Farm's and Dairyland's petitions for review. Our jurisdiction is under K.S.A. 20-3018(b). Dairyland adopts State Farm's arguments.

## THE QUESTION

Do injuries caused by an unexplained accidental discharge of a shotgun occurring while the gun is being removed from a car during a hunting trip arise out of or result from the use of the car?

The answer is "yes." We affirm the Court of Appeals.

## FACTS

The facts and procedural history are stated in the Court of Appeals opinion:

"Garrison was seriously injured when a shotgun discharged as Kurt Pfannenstiel removed the gun from Garrison's car during a hunting trip. Garrison sued Pfannenstiel for negligence and Garrison's automobile insurer, State Farm, for personal injury protection (PIP) benefits.

"State Farm defended on the basis that the accident did not arise out of the ownership, use, or maintenance of a motor vehicle and counterclaimed for a declaration that the liability portion of Garrison's policy did not afford coverage to Pfannenstiel for Garrison's negligence claim against him. Dairyland, Pfannenstiel's automobile insurance carrier, intervened to seek a ruling that no liability coverage existed under the policy it had issued.

"The case was submitted on an agreed record consisting of the depositions of Garrison and Pfannenstiel plus copies of the respective insurance policies. After reviewing briefs and hearing arguments, the trial court ruled the accident did not arise out of the use of a vehicle and entered judgment in favor of both insurance carriers.

"This unfortunate accident occurred in September 1992, when Garrison and Pfannenstiel went dove hunting in rural Ness County. Garrison drove his State Farm insured car during the entire hunting excursion.

"The two men stopped on several occasions to shoot birds. Each time they entered and left the car they stowed their guns between the front seats along the console with the barrels pointing toward the floorboard.

"After several stops they saw some birds and decided that Pfannenstiel would get out of the car and Garrison would then drive on to the far end of a line of trees and hunt there. Garrison slowed the car; as it approached or came to a stop and Pfannenstiel was getting out of the car, Pfannenstiel's shotgun discharged, striking Garrison in the leg and causing a significant injury. Neither party knew what caused the shotgun to fire. Pfannenstiel did not remember if the shotgun came in contact with any part of the car as it fired, although part of Garrison's injury was caused by the knob of a radio which the blast forced through his leg. Neither Garrison nor Pfannenstiel knows if the safety had been engaged before Pfannenstiel picked up the gun.

"There are essentially three portions of the insurance policies which are in issue. As to Garrison's PIP claim, State Farm contested coverage under the following provision:

'SECTION II—NO FAULT—COVERAGE P

'What We Pay

'We will pay in accordance with the *No-Fault Act* for *bodily injury* to an *insured*, caused by accident resulting from the ownership, maintenance or use of a *motor vehicle*.'

"As to State Farm's counterclaim that liability coverage did not apply to Garrison's tort claim against Pfannenstiel, the following provisions are involved:

'SECTION I—LIABILITY—COVERAGE A
'We will:
'1. pay damages which an *insured* becomes legally liable to pay because of . . . *bodily injury* to others, and damage to or destruction of property . . . caused by accident resulting from the ownership, maintenance or use of *your car*; and

'2. defend any suit against an *insured* for such damages . . . .

. . . .
'Who Is an Insured
'When we refer to *your* car . . . *insured* means:

. . . .

'4. any other *person* while using such a *car* if its use is within the scope of the express or implied consent of *you* or *your* spouse.'

"The pertinent language of the Dairyland policy provides:

'*We* promise to pay damages for bodily injury or property damage for which the law holds *you* responsible because of a *car accident* involving a car *we* insure.'

'["Car accident" is defined as] "an unexpected and unintended event that causes injury or property damage and arises out of the ownership, maintenance, or use of a *car* or other *motor vehicle*.'" 20 Kan. App. 2d at 919-21.

## DISCUSSION
### Standard of Review

The Court of Appeals correctly stated the standard of review:

"The issue we consider does not hinge on any factual determination but rather on the interpretation of what the policy requires for an accident to arise out of the ownership, maintenance, or use of a motor vehicle. This is a legal question upon which our review is unlimited." 20 Kan. App. 2d at 922.

The facts were not controverted, therefore the construction and effect of this contract of insurance is a matter of law to be determined by an appellate court. See 20 Kan. App. 2d at 922. Our review must also consider the statute under which the insurance policy was issued: the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101 *et seq.* KAIRA requires an automobile owner to obtain liability insurance that provides "personal injury protection benefits to the named insured . . . for loss sustained . . . as a result of injury" including "bodily harm . . . resulting from an accident arising out of the ownership, maintenance or use of a motor vehicle." K.S.A. 1994 Supp. 40-3104(a), K.S.A. 40-3107(f), and K.S.A. 1994 Supp. 40-3103(i). K.S.A. 40-3107(b) requires that every motor vehicle liability insurance policy shall

"insure the person named and any other person, as insured, using any such vehicle with the expressed or implied consent of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle within the United States . . . , subject to the limits stated in such policy."

Provisions in insurance policies required by KAIRA are to be construed liberally to achieve the legislature's purpose to provide

a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, or use of a motor vehicle.

## The Court of Appeals Opinion

The Court of Appeals cited and quoted several authorities on the meaning of the terms "arising out of" and "use" of a vehicle. The opinion noted that although the use need not be the proximate cause of the injury, there must be some causal connection between an injury and the use in order for there to be coverage. The causation test was described as: "[T]he use of the vehicle need not be the proximate cause of the injury, but rather it is sufficient if the use of the vehicle is a cause in a more liberal sense." 20 Kan. App. 2d at 923. We agree.

Cases from other jurisdictions supporting coverage as including loading or unloading of a vehicle were discussed. Coverage applies whether the policy expressly defines "use" to include loading or unloading the vehicle. 20 Kan. App. 2d at 925-26. The policy provisions in this case do not expressly define "use" to include loading or unloading of a vehicle.

In addition to the cases cited by the Court of Appeals, the following hunting cases also support coverage: *Nationwide Ins. v. Auto-Owners Mut Ins.*, 37 Ohio App. 3d 199, 203, 525 N.E.2d 508 (1987) ("The insured's vehicle was being used to transport the men and their weapons on a hunting trip. This was a proper use of the truck and was foreseeable. As part of this use it was necessary that the guns be placed in the truck and the ammunition removed for that purpose. The injury was thus connected with the use of the truck as a means of transporting the parties' hunting equipment and this relation was sufficient to come under the terms of the automobile policy."); *Kemp v. Feltz*, 174 Wis. 2d 406, 412, 497 N.W.2d 751 (1993) ("[T]he use of a truck for a hunting trip is reasonably consistent with the truck's inherent use.").

We agree with the Court of Appeals' reasoning that for insurance coverage to exist for accidental bodily injury, there is no requirement that the vehicle be either the proximate cause of the injury or physically contribute to the discharge of the gun. Coverage exists

where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting. See 20 Kan. App. 2d at 930.

Our conclusion is also supported by *Toler v. Country Mutual Insurance Co.*, 123 Ill. App. 3d 386, 392, 462 N.E.2d 909 (1984) ("[T]here is no requirement of any actual physical contact between the vehicle and the instrumentality that was the immediate cause of the injury, here, the rifle held by defendant Lingle."); *Kemp*, 174 Wis. 2d at 415 ("[T]he existence of a causal connection between the use of a vehicle and an injury does not require that the vehicle caused the injury" [citing *Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis.2d 450, 462-63, 468 N.W.2d 432 (1991)]).

The Court of Appeals cited a cluster of Minnesota cases as providing the most persuasive support for State Farm's position: *State Farm Fire & Cas. Co. v. Strope*, 481 N.W.2d 853 (Minn. App. 1992); *Hanson v. Grinnell Mut. Reinsurance Co.*, 422 N.W.2d 288 (Minn. App. 1988); and *Farmers Ins. Group v. Chapman*, 416 N.W.2d 857 (Minn. App. 1987). The Court of Appeals noted that under Minnesota law, the vehicle must be an "active accessory" to the accident, but found no precedent to suggest that we would impose such a requirement. We agree. The Minnesota cases are factually distinguishable. We observe that the Minnesota Court of Appeals in *Hanson* noted:

"The Minnesota Supreme Court has suggested that a covered 'use' might exist where a vehicle is being used to transport or store guns during a hunting trip. See *National Family Insurance Co. v. Boyer*, 269 N.W.2d 10, 13 (Minn. 1978)." 422 N.W.2d at 290.

The transportation of guns during a hunting trip describes this case.

State Farm also relies on *Fire & Cas. Ins. v. Illinois Farmers Ins.*, 352 N.W.2d 798 (Minn. App. 1984). *Illinois Farmers* is factually distinguishable from this case and was not discussed by the Court of Appeals. In *Illinois Farmers*, two pheasant hunters stopped their car and hurriedly pulled their guns out to go after pheasants. Both hunters were out of the car, and as one hunter tried to chamber a shell with his gun still partially in its case, it

discharged. Half the gun barrel was inside the car. The homeowner's insurance carrier brought a declaratory judgment action against the automobile insurance carrier to determine if the injuries arose out of the maintenance or use of the motor vehicle. *Illinois Farmers* did not find sufficient causal connection for auto insurance coverage. The court observed: "Morehouse was shot because Mattis was in a hurry to start hunting, not because of any use of the vehicle as a vehicle. The vehicle was the mere situs of the accident." 352 N.W.2d at 800.

We endorse the statement in *Farm Bureau Ins. Co. v. Evans*, 7 Kan. App. 60, 62, 637 P.2d 491 (1981), *rev. denied* 231 Kan. 800 (1982), that "Kansas follows the majority rule that there must be some causal connection between the use of the insured vehicle and the injury" (citing *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 392 P.2d 107 [1964]). We acknowledged the *Esfeld Trucking* language in *Hamidian v. State Farm Fire & Cas. Co.*, 251 Kan. 254, 259, 833 P.2d 1007 (1992).

### The Petition for Review—State Farm's Contentions

We turn now to the arguments raised by State Farm in its petition for review and adopted by Dairyland.

State Farm asserts that the Court of Appeals erred in applying Kansas law. State Farm correctly cites Kansas cases holding that merely because a motor vehicle is the situs of an injury, the injury does not necessarily arise out of the use of the motor vehicle. State Farm quotes from *Allied Mut. Ins. Co. v. Patrick*, 16 Kan. App. 2d 26, Syl. ¶ 3, 819 P.2d 1233 (1991), which states: "[T]he automobile must, in some manner, be involved in the accident." *Patrick*, in holding liability coverage did not apply to a sexual molestation, focused on the question of whether the sexual molestation occurring in a car was an "accident," and even if it was, whether the incident was an "auto accident." In deciding that the incident was not a covered automobile accident, *Patrick* concluded: "We believe the better rule, and the one suggested by the *Evans* court, is that there must be some causal connection between the accident and the automobile allegedly involved." 16 Kan. App. 2d at 29.

State Farm argues that the Court of Appeals failed to apply Kansas law to the facts. We disagree. Garrison's car was more than the "situs of injury." The injury occurred while the car was being used to transport dove hunters during a hunting trip. Garrison was driving. The engine was running. Garrison stopped the car while Pfannenstiel tried to exit with his shotgun to hunt doves. The shotgun discharged while Pfannenstiel was removing it from the car. Garrison had intended to drive further after Pfannenstiel was out of the car. The car was "involved," in that the injury occurred while Pfannenstiel was removing his shotgun from the car and Garrison was driving the car. We hold, under the facts of this case, the injury sustained by Garrison, the driver, when a shotgun inside the car accidentally discharged as it was removed from the car, was a natural and reasonable incident arising out of the use of the car for hunting. During oral argument State Farm's counsel was asked if he knew of any case in the country that supported State Farm's position under a similar fact situation. He knew of none. We have not located one by independent research.

State Farm next contends that because Pfannenstiel's gun was loaded, contrary to safe hunting practice, we should hold for public policy reasons the "use" of the car was not a normal use. State Farm's argument has not been persuasive in other jurisdictions. See *Transamerica Ins. v. United Pacific Ins. Co.*, 92 Wash. 2d 21, 29, 593 P.2d 156 (1979) ("[T]he mere fact that a vehicle may have been used unlawfully or an unlawful event may have occurred during its use, considered alone, does not relieve an insurer from liability if the accident is otherwise covered under the 'ownership, maintenance or use' provision of the automobile insurance contract. *If the rule was otherwise policy coverage would be invalidated if one ran a stop sign, was guilty of speeding, or operating with defective equipment.*") (Emphasis added.); *Kemp*, 174 Wis. 2d at 412 ("Our Supreme Court [citation omitted] held that a death resulting from the accidental discharge of a weapon as a passenger removed the weapon from a van 'arose out of the use' of the van to transport and unload weapons. *Transporting loaded firearms in a vehicle is an illegal activity . . . . Therefore, . . . we conclude*

*that the illegality of the activity is not determinative of the question whether it is consistent with the vehicle 'use.' "*) (Emphasis added.).

We agree with the reasoning in *Kemp* and *Transamerica Ins.* Garrison's car was being used to transport guns during a hunting trip. Transporting loaded guns in a car may be negligent and contrary to safe hunting practice. Negligent gun use is a separate issue from the determination that transporting guns for hunting is a "use" of a vehicle, so that an injury causally connected with such use is afforded insurance coverage. State Farm fails to show how extending insurance coverage in this instance either is contrary to public policy or encourages unsafe hunting practices.

State Farm also implies that the holding of this case may be expanded to include "drive-by" shootings. State Farm's apprehension is misplaced. The difference between a hunting trip and a drive-by shooting seems obvious.

State Farm also contends that the Court of Appeals has construed the insurance policy contrary to the intent of the parties, *i.e.*, the parties did not intend to insure for shooting accidents. We are not persuaded by State Farm's conclusion. We cannot ignore the large body of case law from other jurisdictions that has construed similar policy language to include coverage for shooting accidents occurring during the removal of a weapon from a vehicle during a hunting trip. An automobile liability coverage clause is to be interpreted broadly to afford the greatest possible protection to the insured. *Hamidian*, 251 Kan. at 259.

State Farm suggests that the Court of Appeals has created: (1) an irreconcilable conflict by deciding that there is coverage both under the PIP and liability insurance provisions, and (2) an inconsistency by linking the existence of that liability coverage and the ultimate issue of whether Pfannenstiel negligently handled the gun, resulting in the injury. There is no conflict or inconsistency. Pfannenstiel made "use" of the car while riding in it during the hunting trip and exiting with his gun to hunt doves. Any negligent gun handling while leaving the vehicle does not change the fact that he was still making "use" of the vehicle.

Reversed and remanded to the trial court with instructions to enter judgment finding the accident arose out of the ownership,

maintenance, and use of a motor vehicle along with the required findings of insurance coverage arising from such a judgment.

Affirmed.

LARSON, J., not participating.

ROBERT H. MILLER, C.J., Retired, assigned.