(939 P.2d 959)

No. 76,357

United Services Automobile Association, *Appellee,* v. Donald L. Morgan and Nancy A. Morgan, *Appellants,* Chad Morgan, *Appellant,* and Laura Vetter, *Appellant.*

Opinion filed May 23, 1997.

*Keith R. Henry,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, for appellants Donald L. Morgan, Nancy A. Morgan, and Chad Morgan.

*Robert L. Pottroff,* of Myers, Pottroff & Ball, of Manhattan, for appellant Laura Vetter.

*William F. High* and *Roger W. Warren,* of Blackwell Sanders Matheny Weary & Lombardi L.C., of Overland Park, and *William L. Frost,* of Morrison, Frost & Olsen, of Manhattan, for appellee.

Before Brazil, C.J., Lewis, J. and John Anderson III, District Judge, assigned.

Lewis, J.: This action was initiated by the issuer of a homeowner's insurance policy. The question litigated was whether the incident in question involving an automobile was covered by the homeowner's insurance policy. The trial court held there was no coverage under the homeowner's insurance policy. The defendants appeal.

It is not only politics that make strange bedfellows; sometimes lawsuits have the same effect. The three parties suing each other in the underlying damage action are joined together as appellants on this appeal. For that reason, we begin by identifying the parties involved. Laura Vetter is a defendant in this action but is the plaintiff in an underlying damage action against Chad Morgan. Chad Morgan was a passenger in the other vehicle involved in an accident with the Vetter vehicle and is alleged to have been part of the cause of that accident. Chad Morgan is also an appellant in this action. Donald and Nancy Morgan are the parents of Chad Morgan and are appellants in this action. They also owned the automobile which was involved in the Vetter accident. United Services Automobile Association (USAA) is the insurance company that issued the homeowner's policy to Donald and Nancy Morgan and under which Chad Morgan is an insured. The Morgan family and Laura Vetter all contend that the homeowner's insurance policy offers coverage for Chad Morgan's actions. USAA contends that its policy provides no coverage for Chad Morgan's liability to Vetter. This action was instituted by USAA as a declaratory judgment action, seeking a ruling that it had no coverage or responsibility under its homeowner's policy for the incident involved in the underlying damage action.

The outcome of this action will be controlled by the facts that gave rise to Vetter's damages. Those facts are stipulated by the parties.

On the night of the Vetter accident, Chad Morgan, Dana Gaither, and Jerrod Faulkner left Chapman for a drive to Manhattan. According to the record, they were going to Manhattan " 'to look for girls, to cruise.' " As the evening began, Chad Morgan was driving. At some point in the evening and for reasons of which we are not cognizant, Gaither began to drive the Morgan vehicle, Faulkner was in the passenger seat, and Chad Morgan was in the back seat. This was the location of all three young men at the time of the Vetter accident.

The accident took place in Manhattan in the early morning hours. At about 1:45 a.m., Gaither stopped the car at a traffic light in the left lane of an intersection. Vetter was stopped at the same

light, sitting in her van in the right lane of the intersection. The Vetter vehicle was located approximately 6 feet from the Morgan vehicle. Suddenly and without any provocation whatsoever, Chad Morgan rolled down the window of his car, "flipped off" Vetter, and began to yell various obscenities at her. He called her "a bitch" and "a whore" and yelled other obscene things. He told her to come out of her van and said to her, " '[C]ome over here and such [*sic*] my dick, and if you don't get out of that van I'm going to come get you out of that van.' " Chad Morgan continued to hurl obscenities at Vetter throughout the red light and spat on her van. According to Chad Morgan, he did this to amuse his friends. He also contends he did so spontaneously and without any preconceived plan.

Vetter testified that as the vehicle sat at the intersection while Chad Morgan hurled obscenities and threats towards her, the engine of the Morgan vehicle was being revved and the vehicle rocked back and forth. According to Vetter, Chad Morgan was shaking his fists and making obscene gestures in her direction in a violent manner. Vetter testified she was very frightened and thought Chad Morgan was under the influence of drugs or alcohol.

In this atmosphere, the light turned green, and both vehicles drove forward. Suddenly, according to Vetter, the Morgan vehicle, driven by Gaither, veered sharply into her lane. In her fear of Chad Morgan and in an attempt to avoid a collision with the Morgan vehicle, she turned her vehicle to the right and struck the curb. This action caused her head to hit the steering wheel and snap back against the seat, after which she fell to the floor of the van. Vetter contends that as a result of the injuries she received, she has been diagnosed with brain disfunction and cognitive impairment.

As one might expect, Vetter sued both Chad Morgan and Gaither for damages. However, she settled with Gaither, which leaves Chad Morgan as the only defendant. We do not know, but it is reasonable to speculate, that the automobile liability policy limits have either been exceeded or are close to depleted. We assume that for that reason both Vetter and the Morgans are desirous

of involving USAA as a source for the recovery of damages against Chad Morgan.

Chad Morgan filed a motion for summary judgment in the damage action, which was granted by the trial court. Vetter appealed, and the results of that appeal can be found in *Vetter v. Morgan*, 22 Kan. App. 2d 1, 913 P.2d 1200 (1995). We reversed the grant of summary judgment in that case and remanded it as to Vetter's assault and negligence theories. It was sometime after our remand that the instant matter was filed. The trial on the underlying damage action awaits the determination of this appeal.

In *Vetter v. Morgan*, we held that Vetter's assault claim must be submitted to the trier of fact. In doing so, we noted Chad Morgan's threats to take her from her van, his incredibly foul language, and his close proximity to the Vetter vehicle. All of these facts made the assault charge a question of fact. However, it is clear that assault is an intentional tort and that even if the Morgans' homeowner's policy covers Vetter's negligence claim against Chad Morgan, the policy would not cover Chad's liability for assault. Indeed, on oral argument, counsel for the Morgan family agreed with us as to this point. That question, however, has not been made an issue on this appeal.

In the underlying damage action, we also sent the negligence claim back for trial. We believed there was a reasonable inference that Chad Morgan should have known that his behavior might frighten Vetter and create a risk of harm. We also concluded that a jury could find that Chad Morgan's incredible behavior may have contributed to the accident by causing Vetter to overreact to movement by the Morgan vehicle. In fact, we made the following observation:

"The record contains evidence that Morgan's actions, which continued for some 30 seconds, made Vetter 'very, very frightened.' Within seconds after the light changed, Morgan's car veered suddenly toward Vetter's van, and she reacted by instinctively turning sharply toward the curb. It would not be unreasonable to infer that her frightened state caused her to overreact to the car's approach and hit the curb, and that Morgan's actions were a substantial factor in bringing about the accident. This was a question of fact for the jury." *Vetter v. Morgan*, 22 Kan. App. 2d at 6.

In *Vetter v. Morgan*, we also concluded that Chad Morgan and Gaither could be jointly liable if it were shown that they acted together with a goal of harassing and frightening Vetter. 22 Kan. App. 2d at 8.

USAA bases its declaratory judgment action on the automobile exclusion in its homeowner's policy. It also argued that the policy did not provide coverage for injuries "expected or intended by the insured."

The trial court held in favor of USAA by holding that the automobile exception from coverage relieved USAA from any coverage or obligation under the homeowner's policy. In its decision, it relied on *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 907 P.2d 891 (1995). It was the opinion of the trial court that the automobile was causally connected to Vetter's injuries:

> "The opportunity to frighten Vetter arose because of the use of the automobile. But for the fact that the three young men used the automobile to come to Manhattan, they would not have been in a position for Chad Morgan to act as he did. The automobile was 'involved' itself in that the stipulated facts contain testimony that suggest that the auto's engine was revving and it was rocking back and forth, further adding to Vetter's fright."

## STANDARD OF REVIEW

The question we must determine is whether the homeowner's insurance policy issued by USAA provides coverage to Chad Morgan for the incident described above.

First of all, there is no doubt that Chad Morgan was an "insured" under the homeowner's policy in question. However, it is the position of USAA that the "automobile exclusion" in its policy relieves it of any obligation to its insured.

Section II of the policy in question is devoted to liability coverage and reads as follows:

### "SECTION II—LIABILITY COVERAGES

"COVERAGE E—Personal Liability

"If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

"1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

"2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

**"COVERAGE F—Medical Payments To Others**

"We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. . . .

**"SECTION II—EXCLUSIONS**

"**Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

"a. which is expected or intended by the **insured**;

. . .

"e. arising out of:

    (1) *the ownership, maintenance, use, loading or unloading of a motor vehicle or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an* **insured**." (Emphasis added.)

In this case, the facts are stipulated. The interpretation of a written insurance policy based on stipulated facts is a question of law over which we have unlimited review. See *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994).

This is also a case in which the trial court granted summary judgment to USAA. We review a decision on a motion for summary judgment under the rule that summary judgment is only appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is not a disputed issue of material fact so that the movant is entitled to judgment as a matter of law. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995).

We also deal here with a claim that an exclusion in an insurance policy relieves the insurance company of responsibility. The language of an exception to coverage in an insurance policy must be given its plain and ordinary meaning. *Newton v. Nicholas*, 20 Kan. App. 2d 335, 887 P.2d 1158, *rev. denied* 257 Kan. 1093 (1995). However, in construing an exception to coverage, we are required to employ " 'a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' " 20 Kan. App. 2d at 339 (quoting *Upland Mu-*

*tual Insurance, Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 [1974]).

We will attempt to balance these varied standards of review in deciding the merits of this appeal.

## DOES THE AUTOMOBILE EXCLUSION APPLY?

If we decide that the automobile exclusion in the USAA homeowner's policy applies, there is no coverage under that policy for Chad Morgan's liability to Vetter. If, on the other hand, we hold it does not relieve USAA from coverage, then it must provide a defense and liability coverage to Chad Morgan.

The question in this case is simply one of whether it can be said that Vetter's injuries arose out of the "ownership, maintenance, or use" of an automobile. There are a number of cases in Kansas which deal with that question. However, two of those cases appear to be controlling. One is *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, which was relied on by the trial court in reaching its decision. The other is *Farm Bureau Mut. Ins. Co. v. Evans*, 7 Kan. App. 2d 60, 637 P.2d 491 (1981), *rev. denied* 231 Kan. 800 (1982). We conclude these two decisions provide the basis for our decision on this appeal.

It is obvious there is one important distinction between *Garrison* and *Evans* and the case at issue. In both of those decisions, the issue was whether an *automobile liability insurance policy* provided coverage. In this case, we deal with a homeowner's policy, and the question is whether the automobile exclusion in the homeowner's policy avoids coverage. At first glance, the approaches to those two cases seem to be somewhat incompatible. In determining whether an automobile liability insurance policy covers a particular accident, we are required to construe the coverage clause "broadly to afford the greatest possible protection to the insured." *Evans*, 7 Kan. App. 2d at 62. In this case, we are to construe a clause which excludes coverage, and we must apply a narrow construction. However dissimilar those two approaches appear to be, in this case they achieve the same goal. In both instances, we are seeking, under different standards, to afford the greatest protection possible to the insured and to people injured in an accident. The fact that *Evans*

and *Garrison* involve an automobile liability insurance policy does not lessen their precedential impact on this case.

We begin with *Evans* since that case is the basis for the decision in *Garrison*. *Evans* was a case where an M-80 firecracker was lighted and thrown from the rear of a parked automobile. This explosive device landed in a glass in the hand of the unfortunate victim and, when it exploded, did considerable damage. The question was whether the injuries from the M-80 arose out of "use" of an automobile so as to come within the coverage clause of an automobile liability insurance policy. We held that the accident in question did not arise out of the use of an automobile and, in the process, we developed the standard for determining that issue. The relevant portion of the decision says:

"The policy provision in question is mandated by the legislature. K.S.A. 1980 Supp. 40-3107(*b*). As an automobile liability coverage clause, it is to be interpreted broadly to afford the greatest possible protection to the insured. *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580, 584 P.2d 1264 (1978). In the case before us, the trial court found the vehicle was being 'used' within the meaning of the coverage clause because of its use as a shelter. But mere use of a vehicle, standing alone, is not sufficient to trigger coverage. Thus, even though the vehicle was being used within the meaning of the automobile liability policies, the question remains whether that use is so remote from the negligent act that it can be said there was no causal relationship between the use of the car and the injuries sustained.

"Kansas has construed the word 'use' in connection with automobile liability policies on three occasions: *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 411 P.2d 616 (1966); *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 392 P.2d 107 (1964); *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580. None of these cases is exactly in point, but language found in *Esfeld* indicates Kansas follows the majority rule that there must be some causal connection between the use of the insured vehicle and the injury. In *Esfeld*, the court stated:

" 'In determining the coverage of a policy such as our present one a court must consider whether the injury sustained was a natural and reasonable incident or consequence of the *use* of the vehicle involved for the purposes shown by the declarations of the policy though not foreseen or expected.' 193 Kan. at 11.

"The general rule in other jurisdictions is that 'arising out of the use' of a vehicle requires the finding of some causal connection or relation between the use of the vehicle and the injury. *E.g.*, *Richland Knox Mutual Insurance Company v. Kallen*, 376 F.2d 360 (6th Cir. 1967); *Government Employees Insurance Company v.*

*Melton*, 357 F. Supp. 416 (D.S.C. 1972), *aff'd in unpublished opinion*, 473 F.2d 909 (1973); *Mazon v. Farmers Insurance Exchange*, 107 Ariz. 601, 491 P.2d 455 (1972); *Speziale v. Kohnke*, 194 So. 2d 485 (La. App. 1967); *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10 (Minn. 1978); 7 Am. Jur. 2d, Automobile Insurance § 194, p. 703; Annot., 89 A.L.R.2d 150, 153; 8 Blashfield, Automobile Law & Practice § 317.1, p. 5; 12 Couch on Insurance 2d § 45:56. Stated another way, an injury does not arise out of the 'use' of a vehicle within the meaning of the coverage clause of an automobile liability policy if it is caused by some intervening cause not identifiable with normal ownership, maintenance and use of the insured vehicle and the injury complained of. *Kangas v. Aetna Casualty Co.*, 64 Mich. App. 1, 235 N.W.2d 42 (1975); *Norgaard v. Nodak Mutual Insurance Company*, 201 N.W.2d 871 (N.D. 1972); *Plaxco v. U. S. Fidelity & Guaranty Co.*, 252 S.C. 437, 166 S.E.2d 799 (1969); *State Farm Ins. v. Centennial Ins.*, 14 Wash. App. 541, 543 P.2d 645 (1975). The provision, however, imparts a more liberal concept of a causation than 'proximate cause' in its traditional, legal sense. *Watson v. Watson*, 326 So. 2d 48 (Fla. Dist. Ct. App. 1976); *Dairyland Insurance Co. v. Concrete Products Co.*, 203 N.W.2d 558 (Iowa 1973); *Shinabarger v. Citizens Ins. Co.*, 90 Mich. App. 307, 282 N.W.2d 301 (1979); *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13 (Mo. App. 1980); *State Farm Ins. v. Centennial Ins.*, 14 Wash. App. 541; 7 Am. Jur. 2d, Automobile Insurance § 194, p. 703; 8 Blashfield, Automobile Law & Practice § 317.1, pp. 5-6; 12 Couch on Insurance 2d § 45:56, p. 147." 7 Kan. App. 2d at 62-63.

In *Garrison v. State Farm Mut. Auto. Ins. Co.*, 20 Kan. App. 2d 918, Syl. ¶¶ 3, 4, 894 P.2d 226, *aff'd* 258 Kan. 547, 907 P.2d 891 (1995), we again applied the test developed in *Evans* and held:

"To determine if insurance coverage exists for accidental bodily injury arising out of the ownership, maintenance, or use of an insured vehicle, consideration must be given to the injured party's action as well as the party's intent and whether the injury sustained was a natural and reasonable incident or consequence of the use of the vehicle involved."

"In order for an injury to arise out of the use of an insured vehicle, it need not be the proximate cause of the injury; it is sufficient if there is a causal connection between the injury and the use of the automobile."

The Supreme Court affirmed *Garrison* and said:

"For insurance coverage to exist for accidental bodily injury, there is no requirement that the vehicle be the proximate cause of the injury or physically contribute to the discharge of the gun where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting." 258 Kan. 547, Syl. ¶ 2.

*Garrison* and *Evans* hold that the question is *not* whether the use of the vehicle was the "proximate cause" of the injury. Those cases tell us that if there was a "causal connection" between the injury and the use of the automobile, then, in the context of an automobile liability insurance clause, the accident has happened out of the use of an automobile.

It is interesting to note that in the two decisions in which the vehicles were not moving at the time of the injury the courts have held that the accident did not arise out of the use of the vehicle. In *Evans*, the vehicle was parked and not running when the M-80 was lit and thrown. We held there was no causal connection between the use of the automobile and the injury.

In *Hamidian v. State Farm Fire & Cas. Co.*, 251 Kan. 254, 833 P.2d 1007 (1992), the estate of a decedent sought to recover uninsured motorist benefits and PIP benefits from the defendant insurance company. The facts indicated that as the decedent was driving down the highway, his vehicle was bumped from behind. He stopped his vehicle and got out to confront the driver of the other vehicle. The driver of the other vehicle also stopped his vehicle, got out of it, and promptly shot and killed the decedent. The Supreme Court held that the shooting was unrelated to the operation of the motor vehicle. The court, in reaching this conclusion, pointed out that at the time of the shooting, both vehicles were stopped and driverless.

If we apply the law from the cases cited to the instant matter, we find that both vehicles involved in this accident were running and being driven. They were temporarily stopped at a stoplight when Chad Morgan launched into his incredibly violent attack against Vetter. He did so in the back seat of a running motor vehicle, which provided him with some degree of anonymity and a quick avenue of escape. Indeed, his presence in a running vehicle added to the danger and impact of his threats. We do not speculate by observing that had he been standing on a street corner hurling insults and threats, Vetter could have just driven away. He was not standing on the street corner, he was in a running automobile, capable of giving chase and providing him with the ability to run down Vetter and carry out his threats. In this case, Vetter wrecked

her van in an effort to escape the Morgan automobile. This wreck was a reasonably foreseeable consequence of Chad Morgan's behavior.

Chad Morgan wants us to completely isolate his actions from those of the driver and to analyze them as though they were separate events. We are unable to do so. The actions, while they may not have been pre-planned by the parties, took place at the same time and in the same running motor vehicle.

Chad Morgan testified that he began his vile barrage of threats to "amuse" his friends. The stipulated facts indicate that his two friends, including the driver of the car, found him to be quite amusing and laughed at him. Finally, when the stoplight changed and Gaither veered towards Vetter, Vetter was so frightened that she drove her vehicle into the curb and suffered serious injuries.

None of this could have happened or would have happened without the use of the Morgan vehicle. We think it too simplistic to simply say the vehicle was involved because the three young men in question used it to drive from Chapman to Manhattan. The vehicle was much more intimately involved in the accident than that. The atmosphere in the Morgan vehicle was charged with Chad Morgan's childish and frightening behavior. This behavior created the atmosphere in which Gaither veered toward Vetter, causing her to wreck her vehicle. Without Chad Morgan's screaming threats, the actions of Gaither in veering toward Vetter would not have seemed nearly as sinister and may not even have happened. As pointed out earlier, as Chad Morgan was hurling his threats, Gaither was revving the engine of the Morgan vehicle and rocking the vehicle back and forth, increasing Vetter's fears.

The use of the automobile made it possible for Chad Morgan to come within 6 feet of Vetter's vehicle before he began his threats. The use of automobile in conjunction with Chad Morgan's conduct frightened Vetter to the point that she lost control of her own vehicle. We do not believe that Vetter would have been injured had it not been for the movement of the Morgan vehicle and the threats and violence on the part of Chad Morgan. We have no difficulty in concluding that under the stipulated facts, there was a *causal connection* between the use of the automobile and the

injury suffered by Vetter. In the context of the decisions in *Evans* and *Garrison*, there was a causal relationship between the use of the Morgan vehicle, Chad Morgan's violent and profane threats, and the injuries sustained by Vetter.

We hold that under the facts shown, USAA's coverage of the accident was excluded by the terms of its homeowner's policy. This accident arose out of the "use" of an automobile as that term is used and defined in *Evans* and *Garrison*.

Affirmed.