(978 P.2d 294)
No. 79,363

JANET A. MOLITOR, GREGORY G. MOLITOR, KATHLEEN BRUCH, MARK A. MOLITOR, CHERYL REICHENBERGER, STEVEN M. MOLITOR, and ANN M. CRESS, *Appellants,* v. DUSTIN LEE DAVIDSON, *Defendant.*

FARM BUREAU MUTUAL INSURANCE COMPANY, and WESTERN AGRICULTURAL INSURANCE COMPANY, *Intervenors/Appellees.*

Opinion filed April 16, 1999.

*Theodore C. Geisert* and *Amelia Kovar-Donohue,* of Geisert, Wunsch & Watkins, of Kingman, for appellants.

*Thomas J. Berscheidt,* of Great Bend, for appellees.

Before GREEN, P.J., ROGG, S.J., and JAMES P. BUCHELE, District Judge, assigned.

GREEN, J.: This litigation involves a declaratory judgment action brought by Farm Bureau Mutual Insurance Company and Western Agriculture Insurance Company (Companies). The heirs of William J. Molitor sued Dustin Lee Davidson for negligently causing Molitor's death. Davidson was insured under a car insurance policy issued by the Companies. The Companies intervened in the action and moved for summary judgment, claiming that their insurance policy furnished no coverage for the claims of Molitor's heirs

against Davidson. The trial court granted the Companies' summary judgment motion. We affirm.

The parties stipulated to the following facts:

"3) That solely for the purpose of determining coverage issues the Court may make assumptions as follows:

a) That William J. Molitor lost his life in an automobile accident at the intersection of Highway 281 and SW 60th Street, Pratt County, Kansas on March 23, 1995.

b) That at some time prior to said automobile accident the Defendant, Dustin Lee Davidson drove a motor vehicle to the Highway 281/SW 60th Street intersection; exited said motor vehicle; participated in the removal of a stop sign from the sign pole; placed said stop sign in said motor vehicle; and removed said stop sign from the said location by driving away.

c) That the vehicle utilized by the Defendant was insured by Farm Bureau/ Western Ag. Ins. Co.

d) The decedent, William J. Molitor, was proceeding east on SW 60th Street which was controlled by the stop sign removed. The decedent did not stop before entering Highway 281 which was not controlled by any traffic control or sign, and decedent was struck and killed by a vehicle using Highway 281.

. . . .

"5) That the Court shall determine whether there is a sufficient causal relationship between the death of William J. Molitor and the Defendant's ownership, maintenance, or use of a motor vehicle and whether insurance coverage is therefore available."

Finding an insufficient causal connection between Davidson's use of the covered car and Molitor's death, the trial court granted the Companies' motion for summary judgment.

Appellants argue that the trial court improperly granted summary judgment in favor of the Companies. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). Whether the trial court erred in granting the Companies summary judgment depends upon the construction given the language of the policy. Our Supreme Court has frequently observed that

" '[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court. If the facts are admitted, then it is for the court to decide whether they come within the terms of the policy.' *Farm*

*Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, Syl. ¶ 1, 660 P.2d 1374 (1983)." *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994).

Here, the facts are undisputed, and our standard of review is unlimited.

The Companies' insurance policy furnished coverage for an injury "arising out of the ownership, maintenance or use" of the insured car. Appellants argue that Davidson's use of the car to transport tools to the site and to carry away the stop sign arose out of the use of the insured car. In support of this argument, the appellants cite *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 907 P.2d 891 (1995).

In *Garrison*, a shotgun accidentally discharged while it was being removed from a car, injuring one member of a hunting party. Affirming this court, our Supreme Court found a sufficient nexus between the parties' use of the car to transport shotguns for hunting and the resulting injury. The *Garrison* court stated:

> "We agree with the Court of Appeals' reasoning that for insurance coverage to exist for accidental bodily injury, there is no requirement that the vehicle be either the proximate cause of the injury or physically contribute to the discharge of the gun. Coverage exists where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting. See 20 Kan. App. 2d at 930.
>
> . . . .
>
> "We endorse the statement in *Farm Bureau Ins. Co. v. Evans*, 7 Kan. App. 2d 60, 62, 637 P.2d 491 (1981), *rev. denied* 231 Kan. 800 (1982), that 'Kansas follows the majority rule that there must be some causal connection between the use of the insured vehicle and the injury' (citing *Esfeld Trucking, Inc. v. Metropolitan Insurance Co.*, 193 Kan. 7, 392 P.2d 107 [1964]). We acknowledged the *Esfeld Trucking* language in *Hamidian v. State Farm Fire & Cas. Co.*, 251 Kan. 254, 259, 833 P.2d 1007 (1992)." 258 Kan. at 551-53.

Appellants contend that the use of Davidson's car to transport tools to the intersection and to carry away the stop sign, and the subsequent death of Molitor, is analogous to the use of Garrison's car to transport shotguns for the hunting trip and the ensuing shotgun accident. Nevertheless, this argument ignores *Garrison's* express requirement that some causal connection must exist between the use of the insured vehicle and the injury. In *Garrison*, our

Supreme Court described the causal connection between the use of the vehicle for hunting and the shotgun accident as follows:

"Garrison's car was more than the 'situs of injury.' The injury occurred while the car was being used to transport dove hunters during a hunting trip. Garrison was driving. The engine was running. Garrison stopped the car while Pfannenstiel tried to exit with his shotgun to hunt doves. The shotgun discharged while Pfannenstiel was removing it from the car. Garrison had intended to drive further after Pfannenstiel was out of the car. The car was 'involved,' in that the injury occurred while Pfannenstiel was removing his shotgun from the car and Garrison was driving the car. We hold, under the facts of this case, the injury sustained by Garrison, the driver, when a shotgun inside the car accidentally discharged as it was removed from the car, was a natural and reasonable incident arising out of the use of the car for hunting." 258 Kan. at 554.

By comparison, appellants describe in their brief the connection between Davidson's use of his car and Molitor's death as follows:

"[T]he Defendant brought tools to the intersection in the automobile covered by the liability policy. He took the tools out of the vehicle and used the tools to remove the stop sign from its post. After its removal, he placed the sign into the same automobile and carried it away from the intersection by use of the automobile."

Nevertheless, in determining that the car insurance policy furnished no coverage, the trial court stated that the use of the insured car and the death of Molitor lacked some causal connection. We agree. Similarly, in *Farm Bureau Mut. Ins. Co. v. Evans*, 7 Kan. App. 2d 60, 637 P.2d 491 (1981), *rev. denied* 231 Kan. 800 (1982), this court held that injuries sustained when a passenger in a parked vehicle threw an M-80 explosive device out of the vehicle did not arise out of the use of the vehicle within the meaning of the car insurance policy. Emphasizing the lack of a causal connection, the *Evans* court stated:

"The use of the Roses' vehicle did not causally contribute to Karen's injuries anymore than it would have if one of the occupants, under the facts present in this case, had shot her with a firearm. The fact that the M-80 was lit inside the vehicle and the defendants might have had difficulty lighting it *if* no shelter had been available is so remote that it does not furnish the necessary causal relationship between the use of the car and her injuries." 7 Kan. App. 2d at 63-64.

Because Kansas appellate courts have consistently required some causal connection between the use of an insured vehicle and

the injury, appellants' argument for coverage is more accurately described as an argument for an *extension* of the law. In this vein, appellants contend that public policy and liberal interpretation of the insurance policy require that this court find a causal connection and coverage. Nevertheless, such an extension would be boundless. If this court were to find that the mere use of a car as transportation to and from an accident or crime site creates a sufficient causal connection for coverage, it would be difficult for this court to think of a situation where coverage would not exist.

In support of their argument, appellants also cite several cases from other jurisdictions: *AIG Hawai'i Ins. Co., Inc. v. Smith*, 78 Hawai'i 174, 891 P.2d 261 (Hawai'i 1995) (where insured furnished alcohol to the driver, who struck and killed a pedestrian, coverage existed); *Transamerica v. Farmers Ins. Exchange*, 463 N.W.2d 641 (N.D. 1990) (where insured's dog, which was in bed of insured's pickup truck, bit a pedestrian as she walked by pickup on public street, there was causal relationship between use of vehicle and accident such that insured's vehicle liability policy covered pedestrian's claim for injury); *The Home Insurance Co. v. Towe*, 314 S.C. 105, 441 S.E.2d 825 (1994) (where passenger threw bottle from moving vehicle striking and injuring tractor driver; sufficient causal connection existed between vehicle use and injury because automobile placed passenger in position to throw bottle, and speed contributed to velocity of the bottle increasing the seriousness of injuries sustained); and *Tasker v. Larson*, 149 Wis.2d 756, 439 N.W.2d 159 (Wis. App. 1989) (insurer was liable for injuries sustained by child struck by car upon leaving insured vehicle which driver left parked on highway during brief errand). Nevertheless, each of these cases is factually distinguishable from the instant case. Moreover, these cases lend no support to appellants' contention that the use of a car for transportation to and from the site of an accident or crime supplies the necessary causal connection required by our Kansas appellate courts to provide coverage for an injury "arising out of the . . . use" of an insured car.

Finally, appellants cite *United Services Auto. Ass'n v. Morgan*, 23 Kan. App. 2d 987, 939 P.2d 959 (1997), in support of their argument. Nevertheless, *Morgan* is factually distinguishable from

the present case. In pointing out the causal connection between the use of the insured car and the injury, the *Morgan* court stated:

"The use of the automobile made it possible for Chad Morgan to come within 6 feet of Vetter's vehicle before he began his threats. The use of [the] automobile in conjunction with Chad Morgan's conduct frightened Vetter to the point that she lost control of her own vehicle. We do not believe that Vetter would have been injured had it not been for the movement of the Morgan vehicle and the threats and violence on the part of Chad Morgan. We have no difficulty in concluding that under the stipulated facts, there was a *causal connection* between the use of the automobile and the injury suffered by Vetter. In the context of the decisions in *Evans* and *Garrison*, there was a causal relationship between the use of the Morgan vehicle, Chad Morgan's violent and profane threats, and the injuries sustained by Vetter." 23 Kan. App. 2d at 997-98.

The appellants have failed to show that Davidson's use of the insured car had some causal connection to Molitor's death. As a result, appellants' argument fails.

Affirmed.